# FANNIE E. WEST v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellant.

### Division One, March 15, 1905.

1. **NEGLIGENCE: Passenger: Jumping From Car: Pleading Unnecessary Fact: Responsibility of Railroad: Nonsuit.** Plaintiff, a woman with a baby in her arms and a thirteen-year-old girl child by her side, bought a ticket and took passage on defendant's railroad to Bird's Point near the Mississippi river, opposite Cairo, Illinois, where cars are crossed on a ferry boat, and to get them to the boat the train is run from the station at Bird's Point to the river, a distance of about 1,000 feet, a tow car being placed between the engine and the coach to keep the engine from getting on the boat. When the train reached Bird's Point either it did not stop or else the station was not announced, and plaintiff was carried past the station, in the direction of the river, and seeing that, she asked the conductor to back the train to the station and let her get off, but he told her to keep her seat and he would send her back to the station. After the coach was delivered to the ferry boat, the conductor came to plaintiff, took her hand baggage, requested her to follow, led her across the platform of the car onto the tow car, and pointing to a man on that car, said: "This man will take you back or help you off." The tow car was an open flat car, with a railing. When it arrived at the station one of the crew

told her he was ready to help her off. It was about five feet from the floor of the car to the ground. She asked how she was to get off, and was told she would have to jump; and after the children were taken down, she again inquired if there was no other way, and was told that there was no other way but to jump, and that she must get off. She gave her hands to one of the men who stood on the ground, and, assisted in that way, she jumped down. She soon afterwards suffered with nausea and in a short time suffered a miscarriage. She did not inform the men that she was pregnant. *Held, first,* that the recitals in the petition of the facts explaining her position on the tow car were proper; *second,* that plaintiff was not on the tow car of her own will, but as a result of the defendant's failure to stop the train at the passenger station or its failure to let her know of its arrival, and under the circumstances, though no violence was used to force her to go on the car, her going was the result of coercion, and just what was to be expected of a mother with a baby in her arms and a girl child by her side; *third,* the manner of her descent was not a matter of her own concern, and defendant's responsibility did not end with assistance by one of the crew with his hands in such a way as to break the force of the jar resulting from the jump; *fourth,* the court properly refused to nonsuit her.

2. ———: ———: ———: **Care.** A passenger who as a result of the order of the conductor has gone upon a flat car in order that she may be taken to the station, is entitled to every appliance in alighting therefrom which the circumstances render necessary to secure her safe descent, and which by the exercise of a very high degree of care and prudence the railroad can then and there produce.

3. ———: ———: ———: ———: **Pregnancy.** Employees of a railroad in charge of passengers are chargeable with the common knowledge of mankind that it is dangerous for a woman, a mother, to jump from the floor of a flat car five feet from the ground to the hard ground of a railroad track, and if as a result of that jump a miscarriage results she is not barred from recovering for her injuries by the fact that they did not know and she did not inform them that she was pregnant. The law does not require her, under the circumstances, where she has been told that there is no otherway of descent but to jump, and that she must get down, to announce that she is in the condition of an expecting mother.

4. ———: ———: **Damages: Instruction.** The instruction told the jury that in estimating plaintiff's damages the jury should "take into consideration the character and extent of her injuries, the fact, if you so find the evidence, that they are permanent, together with the physical pain and mental anguish

she had suffered in consequence thereof." *Held,* that this was not a roving commission to the jury to establish their own standard of damages.

5. ——— : ——— : ——— : ———: **Permanent: Common Sense of Jury.** Although it may be true that no expert gives a scientific opinion that plaintiff's injuries are permanent, and that no mention of mental anguish is made in the testimony, yet where the evidence shows that plaintiff has suffered a miscarriage and an impairment of health, the jury's common sense is to be relied on, and a call for damages of that character does not render the instruction error.

6. ——— : ———: **Instructions.** Numerous instructions given in this case for appellant and set out in the statement, are held to be erroneous, and more favorable to it than the law warrants.

7. ——— : ———: **Remarks of Counsel.** Plaintiff's attorney in his argument to the jury stated that defendant's servants would have handled a car load of steers with more care than they did this plaintiff. *Held,* not beyond the limit of forensic debate.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*S. H. West* and *W. H. Miller* for appellant.

(1)   The instruction given on the measure of damages is fatally bad.   (a)   It ignores entirely the injuries set out in the petition, and authorizes the jury to give her damages for any injuries received, whether pleaded or not, and whether the result of the negligence or not.   It is a roving commission to the jury and is in that particular error of the most pronounced kind. What are the proper elements of damage is a question of law concerning which it is the duty of the court to instruct the jury correctly if at all.   Railroad v. May; 33 Ill. App. 366; Stephen v. Railroad, 96 Mo. 207; Flynt v. Railroad, 38 Mo. App. 94; Badgley v. St. Louis, 149 Mo. 122; Hawes v. Stock Yards Co., 103 Mo. 60.   (b)   The plaintiff having set out the injuries com-

plained of, must recover for those and those alone. The instruction ignores the injuries specifically enumerated by the petition. Hence it is a reversible error. Aston v. Railroad, 79 S. W. 999; Chitty v. Railroad, 148 Mo. 64; Hite v. Railroad, 130 Mo. 132; Terry v. Railroad, 162 Mo. 75. The.instruction above set out is practically the same as was given in Wilburn v. Railroad, 36 Mo. App. 215, which was in terms condemned by the Court of Appeals on authority of: Matney v. Grain Co., 19 Mo. App. 112; Hardley v. Boxendal, 9 Exch. 241; Blake v. Railroad, 21 L. J. (O. B.) 237; Knight v. Egerton, 7 Exch. 407; Railroad v. Ogier, 35 Pa. St. 60; Parker v. Jenkins, 3 Bush. 587. (c) This instruction is not only fatally defective because it fails to limit the right of recovery to the specific injuries enumerated in the petition, but because it assumes she suffered physical pain and mental suffering. Fullerton v. Fordyce, 144 Mo. 519; Wilburn v. Railroad, 36 Mo. App. 215; Railroad v. Coats, 15 Am. and Eng. R. R. Cases, 365; Railroad v. Syles, 96 Ill. 162; Railroad v. Morrisey, 18 Am. and Eng. R. R. Cases, 47; Hawes v. Stock Yards Co., 103 Mo. 60; Fullerton v. Fordyce, 121 Mo. 13. (d) The instruction is erroneous in that it authorizes the jury to find damages for permanent injuries. No evidence can be found which even suggests that permanent injuries exist. (2) These various charges were inserted in the petition for the purpose of prejudicing the jury. (3) Assumed risk is pleaded and the evidence fully sustains the plea. Such being the case, the defendant's instruction in the nature of a demurrer to the evidence should have been given. The testimony of plaintiff shows she was thoroughly familiar with all the dangers attending the mode of alighting from the car. Assuming plaintiff's own sworn statement to be true, then the danger was apparent, especially to one in her condition. She was the only person there who knew that condition. Knowing all these things, she assumed the risk of jumping

and can not recover. She was guilty of such negligence on her part as to absolutely preclude a recovery, and this regardless of negligence of defendant. Hogan v. Railroad, 150 Mo. 36; Holwerson v. Railroad, 157 Mo. 216; Phelps v. Salisbury, 161 Mo. 1; Weller v. Railroad, 164 Mo. 180. What would not be negligence in an ordinary person might be gross negligence in a woman in a state of pregnancy. Hickman v. Railroad, 91 Mo. 433. One can not place himself in a position of known danger and recover for injuries resulting therefrom. Railroad v. Murphy, 17 Ill. App. 444; Railroad v. Martin, 7 Colo. 592. (4) The judgment, if justified at all, is so grossly excessive as to stamp it as the result of prejudice and not of injuries actually received. Chitty v. Railroad, 166 Mo. 443; Zellars v. Water & Light Co., 92 Mo. App. 107; Stoetzele v. Swearingen, 90 Mo. App. 588.

*Ely & Kelso* for respondent.

On the question of permanent injury to respondent there was abundant evidence as to the character and nature of the injury, and in this case the question as to whether or not respondent was entitled to recover for permanent injuries was a proper question for the jury. Waldhier v. Railroad, 87 Mo. 37; Tetherow v. Railroad, 98 Mo. 74.

VALLIANT, J.—Plaintiff was injured in alighting from a car on defendant's road and sued to recover damages, alleging that the injury was the result of defendant's negligence.

The plaintiff's evidence tends to prove as follows:

Plaintiff, a married woman, living at Pascola, in Pemiscot county, on December 16, 1900, left home to pay a visit to a sister who lived five miles from Morehouse in New Madrid county. Her route was over the St. Louis, Kennett & Southern Railway to Campbell,

thence over the defendant's railroad to Bird's Point, thence by the Iron Mountain railroad to Morehouse, thence in a handcar five miles to the end of her journey. She carried with her her baby and a daughter about thirteen years old. She bought tickets at Campbell, took passage on defendant's train, and was carried to Bird's Point, which is on the Missouri side of the Mississippi river opposite Cairo, Illinois. At Bird's Point the defendant's track leads down to the river and connects with a ferry or transfer boat; cars are delivered by defendant on the boat and are ferried across the river.

When she boarded defendant's train, the plaintiff informed the conductor that she was to get off at Bird's Point to take the Iron Mountain train for Morehouse. But when the train reached Bird's Point, it either did not stop or else the station was not announced, and the plaintiff was carried past the station, the train going on to the river, a distance of about 1,000 feet, to deliver the cars on the boat. The plaintiff, seeing that she was being carried beyond the station, called to the conductor and asked him to back the train to the station to let her get off, but the conductor told her to keep her seat in the car and he would send her back to the station. The train went on to the river and the car in which the plaintiff was riding was delivered into the ferry boat. Then the conductor came to her, and, taking her hand-baggage and requesting her to follow, led her out across the platform of the car on to what was called a tow car attached to the engine, and pointing to a man on the car said to her, "This man will take you back or help you off." This tow car was not designed for passengers; its purpose was to go between the engine and the car to be delivered on the boat so as to avoid the engine getting on the boat; it was used also to carry tools and the train men rode on it. It was an open flat car without any passenger accommodations whatever, though there were benches for the crew.

The conductor left the plaintiff and her children on this tow car, and they were carried back to the station. On arriving there, one of the train crew told the plaintiff that he was ready to help her off. She asked how she was to get off and was told that she would have to jump. It was about five feet from the floor of the car to the ground. The children were taken down safely by the men. The plaintiff again asked if there was not some other way for her to get down, and was told that there was no way but to jump; she was also told that the engine was ready to go on to the yards, and she must get down. Under those conditions, she gave her hands to one of the men who stood on the ground, who in that way helped her, and with that assistance she jumped to the ground. There was on the side of the car, under the edge of the floor, but out of sight to one standing on the floor of the car, an iron appliance called a stirrup, by means of which switchmen or others who worked on the car could climb on or off. There was also along the sides of the floor of the car an iron railing about a foot high.

On alighting the plaintiff went to a hotel near the depot where she waited until the Iron Mountain train came, three or four hours. When she got to the hotel, she was sick with nausea and swimming in the head, and was sick on the route from Bird's Point to Morehouse, where she arrived that evening, which was Sunday, was sick at Morehouse, cut her visit short on that account and returned home on Tuesday, her sister accompanying her for that reason.

After arriving at home on the evening of December 18th, her illness became serious, but she did not call a physician until December 29th; she suffered a miscarriage, has been in ill health ever since, and was suffering at the trial.

At the close of the plaintiff's evidence, the defendant asked an instruction looking to a nonsuit, which the court refused and defendant  excepted.

The evidence on the part of the defendant tended to prove as follows:

"The employees of the railroad company testified with one accord that the plaintiff was carefully handled; that she did not jump; that she did not fall and that no one was hurt in alighting from the car; that she climbed down the steps as other passengers climbed down; that no complaint was made either to them or to any one else of being hurt." They testified that the plaintiff did not jump off or fall off but on the contrary was "helped off." One of them, Nance, said she came down the steps face front as any other lady or child would, the switchman holding her hands; another one, Henikin, said it was he who helped her, and that she came down backwards, he supporting her by holding her under the arms. The testimony also tended to show that the plaintiff did not inform any of the railroad employees that she was pregnant.

At the request of the plaintiff, the court instructed the jury that if they should find for the plaintiff they should "assess her damages at such sum, not exceeding ten thousand dollars, as from the evidence you may believe will be just and fair compensation to her for the injuries, if any, which she is shown by the evidence to have sustained. And in estimating such damages, you should take into consideration the character and extent of her injuries, the fact, if you so find from the evidence, that they are permanent, together with the physical pain and mental anguish she has suffered in consequence thereof."

At the request of the defendant, the court gave the following instructions:

"1. The court instructs the jury that the plaintiff, by her petition as amended, bases her right to recover in this case on the gross negligence of the defendant, by its servants and employees, in assisting her to alight and jump from the rear end of the guide car of defendant to the ground, a distance of about five feet,

by reason of which negligence she was injured. Now in this connection you are instructed that the burden of proving these facts is on the plaintiff, and unless you find she has done so by a preponderance of the evidence your verdict must be for the defendant.

"2.   The court instructs the jury that, if from the evidence you find and believe that on the sixteenth day of December, 1900, plaintiff, Fannie E. West, did alight from defendant's car, either by being helped or by jumping by assistance of an employee and was injured in so doing, yet your verdict must be for the defendant, unless you further find that defendant's agents were negligent in assisting her to alight, if you find she was assisted, and that such negligence was the direct cause of the injury.

"4.   The court instructs you that if you find and believe from the evidence that plaintiff was assisted in alighting from defendant's car and sustained injuries thereby, resulting in a miscarriage, yet plaintiff can not recover unless defendant's agents, servants and employees were negligent in the assistance rendered, and in determining whether or not they were negligent you should consider all the surrounding circumstances and the fact, if it was a fact, that she was pregnant should not be considered by you in determining the question of negligence, unless you believe from the evidence that they knew of such pregnancy.

"5.   The court instructs the jury that the fact that plaintiff was carried past the station house at Bird's Point and was put on a tow car and returned thereto should not be considered by you in arriving at your verdict. Her right to recover, if at all, is confined solely to the act of alighting from the tow car and the manner of assistance rendered and injuries, if any, flowing directly therefrom.

"6.   The court instructs the jury as a matter of law that it is dangerous and unsafe for a lady in a state of pregnancy to jump, either by assistance or

alone, from the end of a flat car, a distance of four or five feet, onto a hard surface, and that such danger is apparent to every prudent and careful person, and if you find from the evidence that plaintiff was in a state of pregnancy and did so jump or alight from said car and did sustain the injuries complained of, yet she can not recover in this case unless you believe defendant's employees were negligent in rendering her assistance, and unless you so find your verdict must be for defendant.

"7.   The court instructs the jury that, should you find the issue in this case for the plaintiff, yet you are directed that it was her duty immediately upon ascertaining that she had sustained injuries to procure medical aid and to do what a prudent and careful person would under like circumstances and surroundings have done to alleviate and protect herself against the threatened result, and if you believe that she failed so to do, and that by reason of such failure her injuries were intensified and aggravated, then for such aggravation she can not recover and you should take her conduct into consideration in arriving at a verdict."

The defendant also requested the following which the court refused:

"3.   The court instructs the jury that if from the evidence you find that plaintiff jumped from the car, then your verdict must be for the defendant."

In his argument to the jury, plaintiff's counsel said that the railroad company would have handled a carload of steers with more care than they handled this lady, to which remark the defendant took exception.

There was a verdict for the plaintiff for $5,000, and judgment accordingly, from which this appeal was taken.

I.   Appellant insists that the instruction looking to a nonsuit should have been given. This instruction is based chiefly on two propositions, first, that whereas,

as appellant contends, the amended petition specifies the negligence of defendant's servants to have consisted only in the act of assisting plaintiff to alight from the car, the evidence shows no negligence in the manner in which that act was performed, and, second, the plaintiff knew her condition as to pregnancy, knew it was dangerous for her, in that condition, to jump, yet, without disclosing the fact to the defendant's servants, took the risk and jumped, and, therefore, it was her own negligence.

The language of the petition, after stating the facts of the plaintiff's being carried beyond the station and brought back on the tow car and the inconvenient conditions surrounding her, is, "It became necessary for defendant's agents, servants and employees to assist and aid plaintiff in alighting from the rear platform of said guide car [it is so called in the petition] to the ground, a distance of about five feet; that defendant's agents, servants and employees carelessly, recklessly and negligently assisted plaintiff from said guide car, and directed and required plaintiff to jump from said guide car, as aforesaid, in assisting her to alight from said guide car, and in consequence of said careless and negligent assistance in alighting and jumping from said guide car to the ground, without any fault or negligence on her part, plaintiff was thrown suddenly and violently against said defendant's roadbed and received great bodily harm and injuries."

The argument for appellant assumes that the plaintiff was on this tow car (as it is called by defendant, or guide car, as it is called in the petition) of her own will, and that the manner of her descent therefrom was a matter of her own concern, in which no responsibility rested on the railroad company; that she having elected to jump, one of the train crew courteously took her hands in his and held them to break the force of the jar in alighting on the ground and that in so doing, he did nothing that he ought not to have done, and in

so far as the act itself was concerned did it well. The plaintiff's petition is criticised also for containing recitals of the facts which accounted for the plaintiff's position on the tow car at that time, the criticism being that those facts had nothing to do with the case and were injected into it to prejudice the jury against the defendant. But that criticism is not deserved and the argument based on it is not sound. Those recitals were necessary to account for her presence on that tow car. The plaintiff was not there of her own will, she was not there by choice, she was there by the failure of the railroad company to perform its duty to her as a passenger, its failure to stop the train at the passenger station when it arrived at Bird's Point, or failure to let her know it had arrived, its failure after it had carried her past the station to make amends for the wrong by sending her back in a suitable carriage or car. It is true no violence was used to force her to go on the tow car, yet under the circumstances it was coercion. The car in which she had taken passage was carried down the incline on the river bank and landed in a ferry boat; the conductor then came and told her to follow him and he would send her back, she followed him and he led her on to this tow car and left her in the care of one of the train crew. What was to be expected, in the way of resistance, of a woman with a baby in her arms and a thirteen-year-old girl child with her, under those circumstances? What could she do but obey? Then when they arrived at or near the station in the tow car and she asked for means to alight and was told to jump, what else could she do? They told her, according to her testimony, that the engine had to go to the yards and they could not wait; that she must jump, and she did so. In so doing she yielded, if not to immediate physical force, at least to imperious environments for which the defendant alone was to blame. It may be true that when the act of jumping came, the man who gave her a helping hand did all that could

have been done in that kind of assistance, but she was entitled to more assistance than that. She was entitled to every appliance which the circumstances of the case rendered necessary to secure her safe descent and which by the exercise of a very high degree of care and prudence the defendant could then and there have produced.

There was evidence, therefore, from which the jury could justly conclude that the defendant's servants were negligent in the matter of assisting the plaintiff to alight.

The second point on which appellant thinks the court should have given the instruction for a nonsuit is that the plaintiff, knowing her condition as to pregnancy and knowing it was dangerous to jump, was guilty of contributory negligence in doing so. A good deal of what we have said in reference to the first point applies to this also. The plaintiff did not jump of her own accord, the most that can be said of her free will is that she had a choice of perils. She could remain on the tow car and be carried to the switch yards, or whither she knew not, or she could avail herself of the only assistance offered, the outstretched hands of the switchman, and jump, and she chose the latter.

It is said in the brief of the learned counsel that the plaintiff did not tell employees of the defendant that she was pregnant and they did not, therefore, know the extra peril, from that cause, that might result from jumping from the car. Of course they did not know that fact, but they knew, if they had the common knowledge of men, that it was dangerous for a woman, a mother, to jump from a height of five feet to the hard surface of the railroad track. The law did not demand of the plaintiff, as she stood on the floor of that tow car asking the defendant's servants to furnish her means to alight, to tell them that she was in the condition of an expecting mother and therefore afraid to jump. Besides, according to her testimony, which they did not

deny, they had already told her that there was no other way of descent but to jump.

The court was justified in refusing the instruction looking to a nonsuit.

II. It is complained that the instruction given on the measure of damages is erroneous, in that it is not limited to the injuries specified in the petition, but "which she is shown by the evidence to have sustained;" also that it authorizes them to consider if the injuries are permanent. The language of the instruction following that above quoted is: "And in estimating such damages you should take into consideration the character and extent of her injuries; the fact, if you so find from the evidence, that they were permanent, together with the physical pain and mental anguish she has suffered in consequence thereof." The criticism is that it is a roving commission to the jury to establish their own standard of damages.

The instruction is not amenable to that criticism. [Hawes v. K. C. Stock Yards Co., 103 Mo. 60; Badgley v. St. Louis, 149 Mo. 122.]

The evidence as to the plaintiff's injuries related only to injuries of the character specified in the petition, to-wit, the miscarriage and the ill health and suffering consequent. The instruction limited the jury's consideration to injuries shown by the evidence.

It is argued that there was no evidence of permanent injury or of mental anguish. Perhaps it is true that no expert gave the scientific opinion that the plaintiff's injuries were permanent, and that no mention of mental anguish is made in the evidence. But in a case of this particular kind a jury's good common sense is to be relied on. The trial occurred nearly a year after the injury, the plaintiff testified that she had been an invalid ever since and was then suffering, specifying certain trouble incident to women who have had such misfortune. The court did not err in author-

izing the jury to consider if the injury was permanent and to consider not only the physical but also the mental pain. The jury did not abuse the power given them; their award was conservative.

III. The instructions given at the request of the defendant were more favorable to it than the law warranted.

The first and second of those instructions are liable to be interpreted as meaning that the only question of negligence was as to the manner in which the man who held the plaintiff's hand while she jumped, performed that act. That was perhaps not what the court intended, and was evidently not the meaning the jury gave them, but it was the meaning the defendant intended, as we judge from the argument of its learned counsel.

The third instruction the court very properly refused because it was equivalent to a peremptory direction to find for the defendant.

The fourth directs the jury not to consider the fact of miscarriage unless they should find that the defendant's servants knew the plaintiff was pregnant.

The fifth tells the jury that they are not to consider the fact that the plaintiff was carried past the station at Bird's Point, as that had nothing to do with the case.

In the sixth instruction, the court as a matter of law tells the jury that it was dangerous for a pregnant woman to jump from the car at a height of five feet, either with or without assistance, and if this plaintiff did so, then she can not recover, unless the servants of defendant were negligent in the act of rendering her assistance. The instruction is inconsistent in itself. If it was negligence *per se* to jump, under the circumstances, assistance or no assistance, then there was left no question of defendant's negligence in the case.

The seventh instruction would lead the jury off in-

to a realm of conjecture as to what the plaintiff's condition would have been if she had obtained the services of a physician sooner. Suppose she had called a physician as soon as she felt ill, and he had made a mistake in the case, and by mistreatment had increased the trouble, on which side of the account would the law as declared in that instruction have placed the damage?

None of those instructions meet our approval, but we refer to them only to observe that, so far as they go, they were more favorable to defendant than the law authorized.

IV. The remarks of the plaintiff's attorney in his argument to the jury to the effect that the defendant's servants would have handled a carload of steers with more care than they did this plaintiff was a mere rhetorical flourish which was not beyond the limit of forensic debate.

We find no error in the record of which the defendant has any cause to complain.

The judgment is affirmed. *Brace, P. J.,* and *Lamm, J.,* concur; *Marshall, J.,* not sitting.