JOSEPH STRAYER, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 21, 1913.

1. NEGLIGENCE: Personal Injuries: Defective Brake. The plaintiff sued to recover for personal injuries sustained, while operating a brake on one of the defendant's coal cars. The plaintiff was employed by a coal mining company to take the cars out of a place called "the hole," fill them with coal and take them to the place where the defendant railroad picked them up. The plaintiff took the car in question, from "the hole" by loosening the brakes, and by gravity let it run down to the chute. After it was filled he and a fellow workman started to run the car down the hill to the place where loaded cars were received by defendant. While attempting to set the brake, which was defective, it gave way and the plaintiff was thrown ahead of the car, onto the track, run over and had one leg cut off. The de-

fect in the brake existed when the car was placed in "the hole" and was easily discoverable. *Held*, that it was the duty of the defendant to furnish the plaintiff with a reasonably safe car.

2. ————: **Intervening Agency: Proximate Cause.** A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause, and the injury a distinct, successive, unrelated and efficient cause of the injury; but where the condition was such that the injury might have been anticipated, it will be the proximate cause notwithstanding the intervening agency, or where such condition rendered it impossible to avoid injury from another contributory cause.

3. ————: ————: ————. The active, efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source, is the direct and proximate cause.

4. **INSTRUCTIONS: Measure of Damages.** An instruction which states, that if the jury found for the plaintiff "your verdict should be for the plaintiff in such sum as you may think proper not to exceed the sum of twenty thousand dollars," is not erroneous.

5. **EVIDENCE: Admissions: Subsequent Contradiction.** Where the testimony of plaintiff at the trial contradicts admissions made when his deposition was taken, his explanation of his former testimony and his later version of the occurrence may be accepted by the jurors as they are invested with the function of weighing his testimony.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*Campbell & Ellison, J. G. Trimble* and *W. P. Hall* for appellant.

(1) It is the duty of the receiving carrier to inspect all cars used by it, and that a failure to inspect or to inspect properly was the cause of the injury; that the failure to make a thorough inspection interposes an independent agency which severs the casual con-

nection between the campany first guilty of negligence
and the hurt. Railroad v. Merrill, 65 Kan. 436, 442-
443; Fowles v. Briggs, 116 Mich. 425; Lellis v. Rail-
road, 124 Mich. 37; Glynn v. Railroad, 175 Mass. 510;
Sawyer v. Railroad, 38 Minn. 103; Wright v. Railroad,
140 Hun 343; Macklin v. Railroad, 135 Mass. 201. (2)
Instruction 1 given for plaintiff was erroneous be-
cause it told the jury if they found the plaintiff, to
find for him "in such sum as you may think proper
not to exceed the sum of twenty thousand dollars."
This was too uncertain and indefinite, and gave to the
jury unlimited discretion in the assessment of dam-
ages. This proposition is well settled by the adjudi-
cated cases in Missouri. Hawes v. Stock Yards Co.,
103 Mo. 60, 66; Kick v. Doestre, 45 Mo. App. 135, 140;
Flynt v. Railroad, 38 Mo. App. 94, 98; Camp v. Rail-
road, 94 Mo. App. 272, 284.

*Charles E. Murrell* and *Fugate & Son* for respond-
ent.

(1) The act of the appellant railroad company
in placing the defective car at the Rombauer Coal
Company's mine to be loaded with coal was the prox-
imate cause of respondent's injury. Young v. Oil Co.,
185 Mo. 634, 640; Lore v. Mfg. Co., 160 Mo. 625; Reed
v. Railroad, 50 Mo. App. 504; Dickson v. Railroad, 124
Mo. 149; Roddy v. Railroad, 104 Mo. 234. (2) Even
conceding that there were other causes which might
have contributed to bring about the injuries to the
respondent, yet of two proximate causes, the party
who by his negligent act brought about these causes
(one or both of them) is liable. Waller v. Railroad,
59 Mo. App. 410; Berry v. Railroad, 114 Mo. 593; 29
Cyc. 469; same 492. (3) Instruction 2 criticised by
the plaintiff is cured by instruction 3, which reads as
follows: "The court instructs the jury that if they
should find for the plaintiff that they may take into
consideration in assessing damages the mental and

physical pain and suffering endured by plaintiff since said injury, in consequence thereof; the character and extent of said injury and its continuance, if permanent, together with his loss of time and service, and you may find for him in such sum as in the judgment of the jury under the evidence will be a reasonable compensation for the injury, not to exceed the sum of twenty thousand dollars.'' This instruction thoroughly covers the ground and cures any defect which might be in instruction 1. Henry v. Railroad, 113 Mo. 538; Burdoin v. Town of Trenton, 116 Mo. 372. (4) Conceding for the sake of argument that respondent's instruction 1 is defective and is not cured by instruction 2, yet the case should not be reversed, unless the court finds that the defective instruction has misled the jury to the prejudice of the appellant. Henry v. Railroad, 113 Mo. 538; Fitzgerald v. Barker, 96 Mo. 661; McGowen v. Ore & Steel Co., 109 Mo. 518. (5) Although the court should find that error was committed in giving the instruction complained of, yet it was not such an error that would induce the jury to find against the defendant, and the only effect it could have on their verdict would be as to the amount. There is no complaint on the part of appellant that the judgment is excessive, and in fact such complaint could not be seriously made. If the amount is fair then the instruction given was harmless error. Taylor v. Railroad, 16 S. W. 206; Hollenbeck v. Railroad, 141 Mo. 97; Newcomb v. Railroad, 182 Mo. 687; Lee v. Railroad, 195 Mo. 429; McKinstry v. Transit Co., 108 Mo. App. 19; Sherwood v. Railroad, 132 Mo. 345, 346; R. S. 1909, sec. 2082.

JOHNSON, J.—This is an action to recover damages for personal injuries plaintiff alleges were caused by negligence of defendant. The injury occurred November 5, 1909, while plaintiff was working as a common laborer at a coal mine operated by the Rombauer

Coal Company near Novinger in Adair county. The mine was on a hillside and was connected with defendant's railroad by a spur track owned by defendant. This track ran up hill to and beyond the mine and its end was called "the hole" and was used for storing empty cars furnished by defendant to the coal company for loading and shipping out the product of the mine. There was a "tipple" house not far from "the hole" at which the cars were loaded from overhead chutes. A number of sidetracks (one for each chute) ran through the "tipple" and were connected at each end with the main spur track. When cars were brought to "the hole" by defendant they were turned over to the coal company and defendant did not resume control over them until after they were loaded and run down the hill to a place on the spur track where defendant received them. Cars were left in "the hole" with brakes set and chocked wheels and when a car was needed at the "tipple" servants of the coal company would go to "the hole," unlock the brakes and allow the car to run down to the "tipple" by gravity where it would be stopped with its front end under a chute. During the operation of loading the car would be moved forward from time to time until the hind end was brought under the chute to receive its part of the load. After the loading was completed the car would be run down the hill to the place where loaded cars were received, all of which were destined for transportation over defendant's railroad.

On the day preceding the injury the car in question was brought down from "the hole" to the "tipple" and loaded in the manner described, after which it was run a short distance out of the "tipple" and allowed to remain over night on one of the sidetracks. The brake was set and the wheels were chocked. A fellow-servant of plaintiff brought the car from "the hole" and handled the brake during the process of loading and removing the car from the "tipple."

Plaintiff assisted in the loading and chocked the wheels. The next morning another car was brought out of "the hole" and loaded at the same chute. Then it was run down and coupled automatically to the car in question. When the cars collided the front car jumped or pushed away the blocks at the wheels and as the brakeman on the second car could not bring both cars to a standstill with his brake, plaintiff mounted the forward car and hastened to the brake at its front end. There was a small platform attached to the end of the car for the brakeman to stand on and there was a "dog" pivoted at one end to the platform which worked in a ratchet wheel affixed to the brake rod and held the brake in place when it was set. There was a crack in the platform and the pivot bolt of the "dog" was in the line of the crack. This crack had been observed by the laborer who worked at the brake the preceding day and plaintiff had been informed that the "dog" did not work well. The brake had been used effectively up to this time, and we think it a fair inference from all of the evidence that plaintiff did not know the real nature of the defect at the time he started to set the brake. As he descended to the platform he perceived the crack but had no time to investigate the condition of the "dog" and did not know it would not hold the brake when it was tightly set. In a deposition taken sometime before the trial plaintiff made admissions that indicated he had knowledge of the limitations of the brake in its defective state, but at the trial his testimony contradicted such admissions and as the jury were invested with the function of weighing his testimony, we think they were entitled to accept his explanation of his former testimony and his later version of the occurrence. As soon as plaintiff reached the platform he wound up the brake, with the aid of a brakestick he carried with him, set the "dog" in the rachet with his foot and then proceeded to shift his stick in order to kind the brake still tighter.

The strain thrown on the "dog" by this movement proved too great for its weakened attachment to the platform and the pivot bolt slid back and released the brake. The unexpected and rapid reverse revolutions of the brakewheel threw plaintiff off the platform of the car which, at the time, was moving forward very slowly. In trying to get out of the way plaintiff stepped into an unblocked switch and finding he could not extricate his foot, threw his body outside the track. The cars ran over his leg and, despite the efforts of the rear brakeman, ran down the hill. The defect we have described existed when the car was run into "the hole" by defendant, the crack was in plain view, and the defect created by its presence was easily discoverable.

The superintendent of the mine, introduced as a witness by defendant, testified that the duty of ascertaining whether or not cars provided by defendant were supplied with adequate brakes devolved on the laborers who handled the cars and that it was the practice of these men to run down the hill without loading cars found to have brakes which would not hold. We quote from his testimony:

"Q. What would you say as to the practice of the men there running cars by when they found they had defective brakes? 'A. Why, it was generally left to their judgment. If in their judgment the brake was not sufficient to hold they would let it through and drop it by.

"Q. How generally was that known, if you know? A. It was generally known amongst the employees and men that were handling the cars."

The petition charges that defendant was negligent "in allowing said defective car to be placed in the above-described switch yards while in such defective condition as above described, well knowing at the time of the placing of said car at the place, in said swtich yards, the purpose for which the same would be used

and that the employees of the said coal company would be required to shift and move the same on said switch yards and that said switch yards were on a steep grade and that the only means the employees of the said coal company had for holding and controlling the same was by means of the handbrakes thereon.''

The answer, in substance, is a general traverse. [Ramp v. Railroad, 133 Mo. App. 700.]

At the request of plaintiff the court gave the following instructions: ''1. The court instructs the jury that if you find and believe from the evidence that the defendant, the Quincy, Omaha & Kansas City Railroad Company, at the times alleged in plaintiff's petition, operated and maintained the coal spur leading to, and the switch yard at the Rombauer Coal Company's mine No. 2 in Adair county, Missouri, and that said switch yards were located on an incline or grade sloping towards the main coal spur, and that the defendant railroad company furnished and set out cars. from time to time to be loaded with coal at said mine and that said cars were left in a string at the upper or highest end of said switch yards by the defendant, its agents or servants, and that workmen in and about said mine who were in the employ of the Rombauer Coal Company were required to switch said cars onto the various switches and run them to the chutes of said mine and after being loaded were moved on down said switch tracks, and that the only means of handling said cars was by means of the hand brakes thereon, and that sometime prior to the fifth day of November, 1909, the defendant by its officers, agents or servants, carelessly and negligently permitted and allowed a car with a defective brake thereon, to be placed on said switch yards to be used as above described and that the condition of said brake was known to defendant or by the exercise of ordinary care would have been known, and that on or about the fifth day of November, 1909, this plaintiff while in the discharge

of his duties and without negligence on his part, attempted to set the brakes on said car, while the same was moving down the grade on said switch yards, and on account of the defective brake on said car was thrown from and in front of said car and run over by the same and was injured thereby, then your verdict should be for the plaintiff, in such sum as you may think proper not to exceed the sum of twenty thousand dollars.''

"2.  The court instructs the jury that if they should find and be for the plaintiff that they may take into consideration in assessing his damages, the mental and physical pain and suffering endured by plaintiff since said injury in consequence thereof, the character and extent of said injury and its continuance, if permanent, together with his loss of time and service.  And you may find for him in such sum as in the judgment of the jury, under the evidence, will be a reasonable compensation for the injury not to exceed the sum of twenty thousand dollars.''

The jury returned a verdict for plaintiff in the sum of five thousand dollars and after its motion for a new trial was overruled, defendant appealed.

At the close of the evidence of plaintiff and again at the close of all the evidence, defendant requested the court to direct a verdict in its favor.  The requests were refused and these rulings of the court are attacked on the ground that the evidence exonerates defendant from the accusation of negligence that caused the injury and discloses that plaintiff's own negligence directly contributed to his injury.

The first question we shall discuss is whether or not the act of defendant in sending to the coal company a car equipped with a defective brake was an act of negligence towards plaintiff, the servant of the coal company which appears from facts and circumstances disclosed in the evidence to have been the proximate cause of the injury.

There were no contractual relations between plaintiff and the defendant nor did they sustain the relationship of master and servant. Defendant did not employ plaintiff, had no control over him and, so far as any contractual obligation or duty is concerned, was a stranger to him. But a contractual relation existed between defendant and the coal company, the employer of plaintiff. The relationship was that of common carrier and shipper and among its reciprocal obligations and duties was the duty of defendant to furnish the coal company with cars that would be suited to the purposes of their intended use. Defendant knew the lay of the land, knew the important part the brakes would play in the handling of cars at places where the only power used was the natural power of gravity and knew the enhanced risk to the men who would be required to handle the cars that would arise from the use of defective brakes.

Despite the absence of any direct relationship between defendant and the men at the mine, defendant, furnishing the cars for its own profit and for a particular use, the nature of which it had full knowledge, undertook to furnish the coal company with reasonably safe cars and by so doing became charged with the duty to the employees of that company to exercise reasonable care in their behalf. In the leading case of Roddy v. Railway Co., 104 Mo. 234, the facts bearing on the point under discussion are identical with those of the case in hand. The Supreme Court, after finding that the plaintiff had no contractual relation to the defendant, referred to the rule that "where an act of negligence is imminently dangerous to the lives of others, the guilty party is liable to the one injured by the negligence, whether there be a contract between them violated by that negligence or not," and applied the doctrine that where two parties engage in the performance of a contract for their mutual profit and each becomes the contractor of the other to perform

a particular part of the work necessary to carry out the common purpose, each party owes the duty of reasonable care to the employees of the other with respect to the matters over which he retains control or which he undertakes to perform. The following quotation contains the gist of the ruling:

"We think each of these contracting parties owed to the other, and his employees, the duty of properly discharging his part of the joint undertaking, in respect to any matter exclusively devolving upon him. Pickle had nothing to do with selecting or providing the cars. That duty was entrusted entirely to defendant. They were intended for the use of Pickle and his servants in discharging his part of the contract, and we think the obligation rested upon defendant to use ordinary care to provide such as would be reasonably safe for such use."

This doctrine is reasserted and amplified in the later case of Young v. Oil Company, 185 Mo. 634, and is recognized and applied by this court in the recent cases of Fassbinder v. Railway, 126 Mo. App. 563 and Kiser v. Suppe, 133 Mo. App. 19. The duty defendant owed plaintiff was to exercise reasonable care to furnish him a reasonably safe car and the evidence of plaintiff shows a breach of such duty that resulted in the injury.

But it is argued by defendant that such negligence was a remote, not the proximate cause of the injury. It is pointed out that the duty of inspecting the car after it was set into "the hole" devolved on the coal company and it is urged that the negligence of that company in loading the defective car was the proximate cause. In support of this position counsel for defendant invoke the rule that "a prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened between such

prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury." [29 Cyc. 496.] Further on in the paragraph from which the above quotation is taken the author says: "But where the condition was such that the injury might have been anticipated, it will be the proximate cause notwithstanding the intervening agency, or where such condition rendered it impossible to avoid injury from another contributing cause."

In Lynn Gas & Elec. Co. v. Meriden Ins. Co., 158 Mass. 570, it is said, "the active, efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source, is the direct and proximate cause referred to in the cases." [See also Driskell v. Ins. Co., 117 Mo. App. 362.]

It is not so difficult to define the rules of proximate cause as it is to make proper application of them to the facts of the particular case. As we view the facts of the case in hand the important question is whether the negligence, if any, of the coal company in using the defective car should be regarded as the intervening act of an independent agency or as one related to or consquential upon the act of defendant in providing an unsafe car for the use of the servants of the coal company.

The facts considered by the Supreme Court in the cases of Roddy v. Railroad and Young v. Oil Co., supra, in their relation to the questions under discussion are very similar to the facts of the present case. In the Roddy case the plaintiff was the servant of the quarryman to whom the railroad company furnished cars for the shipment of stone. The car in question had a defective brake and the plaintiff was injured in consequence of the defect. The Supreme Court, in effect, held that the negligence of the railroad company was the proximate cause of the injury

on the theory that "while the relation of master and servant did not exist between these parties, defendant owed to plaintiff the observance of reasonable care in the selection of its cars for his use, which is the same degree the master is required to observe in providing his servants with instrumentalities for carrying on his business."

A careful analysis of this language, viewed in the light of the context, discloses that the court did not overlook the subject of proximate cause. The effect of the relationship of master and servant between the plaintiff and the quarryman and of the duty (the nondelegable duty) of the master to exercise reasonable care to furnish his servant with reasonably safe instrumentalities with which to work, doubtless, was considered and the conclusion was reached that the railroad company occupied the position of an agency employed by the master to perform the duty he owed his servant and, as such, was answerable to the servant for the injurious natural consequences of its negligence in the performance of that duty. In substance the same view is expressed in the Young case where it is said: "If the defendant placed this obstruction there without the consent of the railroad, or maintained it there after it was notified by the railroad company to move it back, its responsibility to plaintiff's husband for his injury was no less than if it had obtained consent. If it did so with the consent of the railroad company, then both the railroad and defendant were liable for such negligent obstruction, but the fact that the railroad owed its employees the duty of not subjecting them to such a dangerous obstruction in no manner excuses defendant for so placing it by consent of the railroad company."

Following these decisions we must hold that the acts of the defendant in furnishing a defective car and of the coal company in using it were not independent but were related causes, and that since the act of de-

fendant was that which set in motion the chain of events that naturally culminated in the injury, it should be regarded as the proximate cause within the legal definition of that term.

We do not agree with counsel for defendant that plaintiff was guilty in law of contributory negligence. Viewing his testimony in the light most favorable to his cause, as we must do in the consideration of questions raised by the demurrer to the evidence, he knew from information communicated by his fellow-servant that the brake was not working well, but he also knew it had answered the purposes of bringing the car down to the "tipple" and of stopping it after it had been loaded and removed from the "tipple." The jury had a right to conclude that a reasonable person in his situation would have considered that the brake was not so imminently dangerous that it could not be used in safety to stop the car. When first he saw the brake he was confronted by an emergency that called for prompt and immediate action on his part and afforded him no opportunity to make an examination of the defect. Whether or not he exercised reasonable care appears from the evidence to be a question of fact which was correctly referred to the jury for solution. The demurrer to the evidence was properly overruled.

The first instruction given at the request of plaintiff told the jury if they found for him "your verdict should be for the plaintiff in such sum as you may think proper not to exceed the sum of twenty thousand dollars." This is the only reference in that instruction to the subject of the measure of damages and the objection of defendant is that it gave the jury "unlimited discretion in the assessment of damages" and did not restrict them to the limits fixed by the pleadings and evidence.

Among the cases cited by defendant in support of the objection is Hawes v. Stock Yards Co., 103 Mo.

60. In that case the only instruction on the measure of damages told the jury if their verdict should be for the plaintiff to find for him "in such sum as they believed would compensate him for his injuries, so received, not exceeding the sum of $20,000." The court speaking through BARCLAY, J., said of the instruction that it "totally failed to inform the jury of the proper elements of compensation within the meaning of the law. It gave them a roving commission to conjecture the consequences of plaintiff's injuries, however remote, and to apply such measures of compensation therefor as might to them seem appropriate, without reference to the legal rules for determining the limits of such compensation. What are the proper elements of damage, within the meaning of the law, in a case of this kind, is a question for the court; but the ascertainment of the proper sum to be awarded for them is a question for the jury. We think the instruction in this case erroneous."

In the later case of Browning v. Railway, 124 Mo. 55, the Supreme Court, again speaking through Judge BARCLAY, held that an instruction which permitted the jury to allow "such sum as in their judgment will be a fair and just compensation to her for the loss of her husband not exceeding the sum of $5000," was not erroneous "in its general scope and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations in an instruction embodying its views."

No reference was made in the opinion to the Hawes case but it was cited in the briefs and since the same judge wrote both opinions and they deal with precisely the same question, the conclusion is inevitable that the court in announcing and applying a different rule in the last case from that employed in the first intended to overrule the first decision.

In Harmon v. Donohue, 153 Mo. 263, the instruction after specifying the elements of plaintiff's damages concluded with the direction that "the jury may assess her damages at any sum they may deem proper not to exceed the amount sued for, namely, $10,000." Held, "if the instruction had been simply that the jury might give the plaintiff any sum they deemed proper, not to exceed the amount sued for, it would have been subject to the uncertainty urged." This is a repetition of the rule applied in the Hawes case, but the opinion proceeds to say that "read in connection with that which precedes the words objected to in the same instruction, defining specially what the elements of plaintiff's damages must be, no intelligent juror could have been misled by the instruction." The decision in the Browning case is cited with approval, though as we have shown, it is in conflict with the Hawes case, the rule of which is reaffirmed in the opinion.

In West v. Railroad, 187 Mo. l. c. 364, the Hawes case is cited apparently with approval.

In Smith v. Fordyce, 190 Mo. 1, the instruction on the measure of damages told the jury "that if they find a verdict for the plaintiff, they may allow him such damages not exceeding ten thousand dollars as they may believe he has sustained by reason of the injuries, if any, to his left arm caused by the collision described in the evidence." This instruction cannot be differentiated from those oppositely ruled upon in the Hawes and Browning cases. The Supreme Court in an opinion written by Judge GANTT reaffirmed the Browning case holding that the instruction "was sufficient as a general instruction, and if there were any peculiar modifying or qualifying facts which the defendants desired the jury to take into consideration it was clearly their duty to have submitted them in an instruction of the court."

The last decision of the Supreme Court on the subject is in the case of Waddell v. Railroad, 213 Mo. 8, where the instruction authorized the jury to assess plaintiff's damages "at such sum as would be a reasonable and just compensation for .the injuries sustained by her, if any, as shown by the evidence, not exceeding, however, the sum of ten thousand dollars." After reviewing the authorities the court approved the instruction saying: "The instruction in the Hawes case differs from that in the case at bar in that it does not refer to either the allegations in the petition or to evidence with respect to the injuries sustained, while the instruction under consideration limits the damages to such sum as might be warranted by the evidence in relation to the injuries, their nature and character, not exceeding the amount claimed in the petition.

An instruction substantially the same as this met the approval of this court in West v. Railroad, 187 Mo. 351, wherein it was ruled that such instruction was not amenable to the criticism passed upon that in the Hawes case. If defendant was not satisfied with the instruction as given because it was too broad, and likely to be misunderstood by the jury, it was the duty of defendant to ask for such modification thereof as seemed necessary to restrict it to the proper elements of damage under the allegations in the petition. [Browning v. Railroad, 124 Mo. 55; Minter v. Bradstreet, 174 Mo. 491; Smith v. Fordyce, 190 Mo. 32.]"

It will be noted that the court does not overrule the Hawes case in express terms but cites with approval the Browning and Smith cases which, in legal effect, do overrule it and in distinguishing it from the case before them the court, in substance, overrule it and substitute the rule of the Browning case which treats as mere nondirection an instruction on the measure of damages which merely by silence covers a

scope too broad. [Simpson v. Ball, 145 Mo. App. 268; Wilson v. Railroad, 160 Mo. App. 649.] But conceding that the latest decision of the Supreme Court puts a spark of life in the rule of the Hawes case, makes it applicable to those cases wherein the instructions on the measure of damages, "do not refer to either the allegations of the petition or to the evidence with respect to the injuries sustained," still we do not think the instructions before us fall under the ban of that rule. While the first instruction purports to cover the whole case, so far as the issues of negligence are concerned and directs a verdict, it does not purport to go into the subject of the elements of plaintiff's damages and should be read in connection with the second instruction which does state the elements the jury may consider. The rule is too well settled to require the citation of authorities that the instructions must be read as a single charge to the jury and so reading them, we think they express the idea that the jury were restricted in the assessment of damages to the elements stated in the second instruction and were not given a roving commission "to think damages." At first we inclined to the view that the second instruction was not couched in restrictive but in merely advisory terms and therefore should not be considered as putting bounds to the broad direction of the first instruction, but we think this view cannot be harmonized with the decision of the Supreme Court in Harmon v. Donohoe, supra, which accords restrictive effect to a similar form of expression.

Point is made that error was committed by the court in refusing defendant's first instruction but we have answered that point in our discussion of the demurrer to the evidence.

We find no prejudicial error in the record and the judgment is affirmed. All concur.