Benedict THEBEAU, Respondent,

v.

Raymond THEBEAU, Appellant.

No. 46435.

Supreme Court of Missouri,

En Banc.

June 8, 1959.

Dearing, Richeson & Weier, Samuel Richeson, Hillsboro, for appellant.

Rexford H. Caruthers, Jack H. Ross, St. Louis, for respondent.

LEEDY, Judge.

Benedict Thebeau brought this action against his brother, Raymond, to recover damages for personal injuries sustained through the alleged negligence of Raymond in the operation of his pickup truck in which plaintiff was riding as a passenger. Verdict was rendered for Benedict for $15,000, and Raymond has appealed from the ensuing judgment.

About 6:30 a. m., April 14, 1955, Benedict and Raymond, together with another brother, Charles, were riding in Raymond's 1953 "Chevy" pickup truck en route to their place of employment. On the occasion in question Raymond was driving, Charles was in the middle and Benedict was in the seat on the right side. At the intersection of state highways No. 47 and No. 21 they stopped to permit a red pickup truck (of the same type as defendant's) to proceed northwardly on No. 21 ahead of them. The Thebeau truck then followed the red pickup northwardly along highway No. 21 a distance variously estimated to be from one-half to one mile to the point at which the casualty occurred, during which interval both vehicles were traveling at about the same rate of speed, to wit, 45 or 50 miles per hour, and the distance separating them was 55 or 60 feet. In other words, the Thebeau truck followed at 55 or 60 feet behind the forward truck. It had been raining the night before, and the highway was still wet; it was "just sort of misty." As they were thus proceeding along the highway, plaintiff noticed a cow standing by the road. Plaintiff's testimony in that connection, as well as with respect to other facts and circumstances immediately surrounding the casualty, follows:

"She come across a little gully. She had her head hanging over the road a little bit, not much. This other truck was going up to the cow and he [the other driver] started slowing down.

"Q. Was that the truck in front of yours? A. Yes, he started slowing

down. Then I hollered, I told him [defendant] there was a cow up there.

"Q. You hollered out when you saw the cow? A. Yes, sir.

"Q. What did you say? A. I said, 'Watch out, there is a cow.'

"Q. What did your brother do? A. He just took—he motioned suddenly, turned his wheels and put his brakes on and went over in this ditch.

"Q. What happened to the truck when he did that? A. It turned over on the right side and had me pinned underneath it.

"Q. Do you have any idea how close Raymond's truck was to this other one when he took this motion that you described? A. About fifty to sixty feet, something like that.

"Q. Did the cow ever come out on the highway itself, or do you know? A. No, sir.

"Q. With reference to when you yelled—you said you yelled, 'Watch out,' when did Raymond take this motion, was it before or after you yelled? A. It took him a little while to think, I guess. He took it pretty sudden.

"Q. Your truck never came in contact with this other one? A. No, sir.

"Q. Did you pay any attention to this other truck after that, where it went, what it did? A. As far as I know it just went on down the road.

"Q. What happened to you when this truck turned over? A. I got pinned underneath it."

The defendant was the only witness called in his behalf. Asked what he saw the other truck do as he was approaching the place where the accident happened, defendant answered: "I guess he [the other driver] seen the calf and started to stop. * * * I didn't see any brake light. I started to stop and was too close behind

# 676

him and I started to cut it to the left and when I did I lost control of it." He further testified that he saw the truck was slowing down and stopping, and that is what caused him to put his brakes on; he knew "back up the road a ways before the accident happened" that the red glass in the brake light of the red pickup was "all broke out" and he "couldn't see no bulb." He was not making any effort to pass; he was just following behind up until the man put his brakes on, during all of which time the left side of the road was open and clear—no one coming from the other way.

Plaintiff's instruction No. 1, upon which his cause was submitted to the jury, hypothesized a violation on defendant's part of section 304.044 (all statutory references are to RSMo 1949 and VAMS, unless otherwise noted), and authorized a verdict for plaintiff, as follows:

"The Court instructs the jury that it is unlawful for the driver of a truck when traveling upon a public highway of this State, outside of a business or residential district, to follow within 300 feet of another such vehicle except when passing.

"In this connection you are further instructed that if you find and believe from the evidence that on the 14th day of April, 1955, plaintiff was riding as a passenger in a truck being driven by defendant generally eastwardly on Missouri State Highway 21, at the place thereon mentioned in evidence, and that such place was outside of a business or residential district; and if you further find that at said time and place defendant was following another truck, without passing, at a distance less than 300 feet, and had followed said other truck at a distance of less than 300 feet, for approximately one mile, and that in so following said other truck defendant failed to exercise the highest degree of care and was negligent; and if you further find that said other truck then and there suddenly

reduced its speed and that defendant thereafter, in an effort to avoid a collision with said other truck, suddenly reduced the speed of his truck and suddenly swerved the same and thereby caused it to overturn and injure plaintiff, if you so find; and if you further find that the overturning of said truck was directly and proximately caused by the defendant's negligence, if any, in following said other truck at a distance less than 300 feet, if so, then your verdict should be for the plaintiff and against the defendant."

Defendant assigns error in the overruling of his motion for a directed verdict, and his after-trial motion for judgment for the reason that the negligence submitted (defendant's admitted violation of section 304.-044) did not constitute actionable negligence because it was not the proximate cause of plaintiff's injuries, nor was there any causal connection between such negligence and said injuries.

Section 304.044 and section 304.017 are adaptations of § 31 of the Uniform Motor Vehicle Law. 11 Uniform Laws Annotated, p. 35. (As we understand, the Uniform Act has been declared obsolete or withdrawn by the National Conference of Commissioners on Uniform State Laws.) The sections of our statutes just mentioned read, respectively, as follows:

Section 304.044. "1. The following terms as used in this section shall mean

"(1) 'Bus,' any vehicle or motor car designed and used for the purpose of carrying more than seven persons;

"(2) 'Truck,' any vehicle, machine, tractor, trailer or semitrailer, or any combination thereof, propelled or drawn by mechanical power and designed or used in the transportation of property upon the highways.

"2. The driver of any truck or bus, when traveling upon a public highway of this state outside of a business or

residential district, shall not follow within three hundred feet of another such vehicle; provided, the provisions of this section shall not be construed to prevent the overtaking and passing, by any such truck or bus, of another similar vehicle.

"3. Any person who shall violate the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished accordingly."

Section 304.017. "The driver of a vehicle other than those designated in section 304.044, RSMo, shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway. Vehicles being driven upon any roadway outside of a business or residence district in a caravan or motorcade, whether or not towing other vehicles, shall be so operated, except in a funeral procession or in a duly authorized parade, so as to allow sufficient space between each such vehicle or combination of vehicles as to enable any other vehicle to overtake or pass such vehicles in safety. This section shall in no manner affect section 304.044, RSMo, relating to distance between trucks traveling on the highway."

Section 304.044 does not appear to have as yet received judicial interpretation in this state, but similar statutes have been considered in other jurisdictions with varying results, examples of which we shall cite. In Maryland it was held that the purpose of the statute prohibiting a commercial vehicle following within 150 feet of another commercial vehicle was not to protect trucks from collision with each other, but to provide sufficient space between them to permit lighter vehicles to pass, and that as trucks were governed by another section (corresponding in some respects to our section 304.017) the court would look to

such other section to find whether the offending truck driver was guilty of contributory negligence. Christman v. Weil, 196 Md. 207, 76 A.2d 144. In Hayes Freight Lines v. Wilson, 226 Ind. 1, 77 N.E.2d 580, it was held there was no evidence showing causal connection between the alleged violation of the statute with respect to spacing of the trucks and the injuries, and reversed the judgment, but ordered a new trial. In Tupts v. Judy (Kentucky Utilities Co.), Ky., 272 S.W.2d 335, it was held that the violation of such a statute had no possible causal connection with the collision and could not be the basis of the truck driver's liability. See, also, Greathouse v. Mitchell (Greathouse v. Cheap), Ky., 249 S.W.2d 738. On the other side of the picture is Isenhour v. McGranighan, 178 Va. 365, 17 S.E.2d 383, 384, where it was contended that there was no causal connection between the proximity of the trucks and the resulting injuries to plaintiff, and that it was not the purpose of the statute to cover such a situation as was disclosed by the evidence. Held: "A violation of this statute is negligence, and if such negligence is the proximate cause of injury to another, then such other is entitled to recover." The Appellate Court of Indiana, in Banc, in American Tel. & Tel. Co. v. Smyser, 121 Ind.App. 668, 101 N.E.2d 925, without mentioning Hayes Freight Lines v. Wilson, supra, held the issue of defendant's negligence in failing to maintain the statutory distance to be a jury question. And in Jones v. King, 211 Ark. 1084, 204 S.W.2d 548, where the statute was in existence but not discussed, the court said that whether the closeness of the rear truck to the forward truck was the proximate cause of the injury was for the jury.

It will be recalled that defendant was trailing the forward truck at a distance of 55 or 60 feet when the driver of the latter started to slow down, and defendant, discovering such fact, also started to stop but, as he himself put it, he "was too close behind him," and then cut to the left, and when he did so lost control, etc. We are

of the opinion that the admitted position of defendant's truck in violation of the statute when coupled with defendant's further admissions as just outlined was sufficient to remove from the case any question of want (as a matter of law) of causal connection, and we so hold. There having been sufficient evidence of actual cause, or causation in fact, we look then to the matter of whether such violation was also the proximate (legal) cause of the resulting injuries to plaintiff.

■ We have no doubt that the main purpose of section 304.044 was, as the Maryland court held, to provide sufficient space between trucks and busses to permit lighter vehicles to pass, but we are not persuaded that this was its only purpose. We think it obvious that as a traffic safety regulation it was also intended for the protection of forward trucks and those trucks following, as well as the drivers and passengers therein. It should be noted that, unlike the Maryland and other similar statutes in the cases we have mentioned, our section 304.017 (providing that the driver of a vehicle shall not follow another vehicle more closely than is reasonably safe and prudent) by its express terms is inapplicable to the drivers designated in section 304.044. Note the language with which section 304.017 opens and closes: "The driver of a vehicle *other than those designated in section 304.044,* RSMo, shall not follow," etc. "This section shall in no manner affect section 304.044, RSMo, relating to distance between trucks traveling on the highway." (Italics, the present writer's.) Therefore, if the safe and prudent following distance rule is applicable to drivers designated in section 304.044, it is by virtue of a common law duty, and not under section 304.017.

■■ Defendant argues with some degree of plausibility that if negligence of defendant caused the upset of his truck, it consisted of negligence *in the manner of* swerving to the left, or applying his brakes, or of attempting to swerve into the right lane after he got into the left lane, or in some other respect, but that in no event could his negligence in following within the prohibited statutory distance have been an efficient, producing cause of plaintiff's injuries. We are constrained to reject the argument under the familiar principal thus stated in Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78: "Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant." To the same effect is Cregger v. City of St. Charles, 224 Mo. App. 232, 11 S.W.2d 750, 753, in an opinion by Bennick, C., for the St. Louis Court of Appeals: "Proximate cause is commonly, and best, defined as that cause which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred. Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S.W. 475; Jaquith v. Fayette R. Plumb, Inc., Mo. Sup., 254 S.W. 89; Northern v. Chesapeake & Gulf Fisheries Co., 320 Mo. 1011, 8 S.W. 2d 982; George v. Kansas City Southern R. Co., Mo.App., 286 S.W. 130; 45 C.J. 898. In other words, it is sufficient to constitute proximate cause that the negligence for which recovery is sought was the efficient cause which set in motion the chain of circumstances leading up to the injury itself (Wengert v. Lyons [Mo.App.] 273 S.W. 143; Strayer v. Quincy, O. & K. C. R. Co., 170 Mo.App. 514, 156 S.W. 732), and the primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole, the first so operating upon the others as to make it primarily productive of the injury. Wengert v. Lyons,

supra; Johnson v. Ambursen Hydraulic Construction Co., 188 Mo.App. 105, 173 S. W. 1081; 45 C.J. 910."

 The remaining point is that the vehicles were not "trucks" within the meaning of the statute, and hence the evidence failed to show that either vehicle—defendant's or the one ahead of it—came within the class of vehicles defined by section 304.044, thus rendering plaintiff's instruction reversibly erroneous. The case was not defended on any such ground, and, perhaps for this reason, the evidence touching the precise nature of the vehicles involved was somewhat meager. The record shows defendant's vehicle was a 1953 Chevrolet pickup truck on which there was a bed— "That would be used for general hauling stuff, lumber and stuff." The other vehicle was admittedly of the same type, so that if one fell within the contemplation of the statute, so did the other. Section 304.044 defines "truck" (insofar as here relevant) as "any vehicle * * * propelled or drawn by mechanical power and designed or used in the transportation of property upon the highways." The fact that the vehicle was not at the moment being so used would not be determinative. Obviously, by reason of its name and body—"used for general hauling stuff, lumber and stuff"—it fell within the statutory definition. See, also, State v. Lasswell, Mo.App., 311 S.W.2d 356; Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674. We find that throughout the trial every one concerned, including defendant and his counsel, consistently referred to both vehicles as pickup trucks. The case having been tried on that theory, a reversal would not be warranted because of the absence of an express factual requirement of a finding by the jury with respect to the nature of the vehicles.

The judgment is affirmed.

All concur.