WALTER H. LOVETT v. KANSAS CITY TERMINAL RAILWAY COMPANY, Appellant.— 295 S. W. 89.

Division One, April 11, 1927.

1. NEGLIGENCE: Safety Appliance Act: Going between Moving Cars: Proximate Cause: Question for Jury. As a general rule the question of proximate cause is one for the jury, and it is clearly so in an action based on a violation of the Federal Safety Appliance Act where there is positive evidence that when the sixth car of six backing freight cars came opposite the switchman he grasped the lever of the automatic coupler by which the lock pin is raised and, failing to lift the pin because the lever was defective and would not work, he reached over and with his right hand lifted the pin on the fifth or next following car and gave a stop signal with his left, and by the time he had completed the uncoupling and was turning from the opening between the cars there was a space of eight or ten feet from a concrete dock by which space he could have got clear away from the cars and would have done so had not his movements been impeded by the catching of his clothing upon a projection from the fifth car, but being caught by that car he was carried forward and rolled along in the eight-inch space between its side and the dock, and that it was not customary, when a lifter would not work, to give a signal to stop the cars and when they had stopped to go in between them and lift the pin, although there were some rules "for passenger brakemen" and for the switching of a "train" which forbade switchmen to go in between moving cars. With such evidence in view it cannot be ruled as a matter of law that the proximate cause of the switchman's injury was his own negligence either (a) in going between the moving cars to uncouple them or (b) in going between them in violation of those rules.

**2. INSTRUCTION: Uncontroverted Facts: Own Line: Licensee.** An instruction which assumes the existence of uncontroverted facts is not erroneous. Where it is conceded that the tracks owned by a wholesale house, were rightfully used by the defendant railroad company in bringing cars to and removing them from the house's docks, an instruction is not erroneous in assuming that defendant's car with the alleged defective coupler was being used on "its line." Tracks so used by defendant as licensee, or through an arrangement with the owner, are a part of defendant's line within the meaning of the Federal Safety Appliance Act.

**3. ————: Action under Safety Appliance Act: Defective Coupler: Proof.** In an action based on a violation of the Federal Safety Appliance Act, the ultimate fact to be submitted to the jury for their finding is that the car was not equipped with a coupler which could be uncoupled without the necessity of men going between the cars, and an instruction which submits that issue is not erroneous because it does not also require the jury to find that the injured switchman gave "the automatic appliance a proper trial" before he made use of the lifter on the next following car, but the omission merely goes to the sufficiency of the proof, and is not important where the evidence tending to show a specific defect which effectually prevented the coupler from operating left nothing to conjecture or opinion.

**4. ————: ————: Contributory Negligence: Withdrawal: Invitation to Increase Damages.** Where the petition contains charges of negligence other than a violation of the Safety Appliance Act, and the answer pleads contributory negligence to these charges, and those charges, in a submission of the case to the jury, are abandoned, an instruction withdrawing the defense of contributory negligence is proper, and one which, in such state of the case, after properly hypothesizing plaintiff's right to recover for defendant's negligent violation of said act, tells the jury that "the contributory negligence of plaintiff constitutes no defense to his cause of action, nor should such contributory negligence diminish his damage," is not inappropriate, nor an insidious invitation to the jury to be liberal in their estimate of plaintiff's damages.

**5. ————: Two Ways: Choosing Obviously Dangerous One: Exception: Customary Way.** The rule that, where there are two methods available to the servant for the performance of the work in hand, one safe and the other obviously dangerous, and he chooses the latter, he is guilty of negligence as a matter of law, is not without qualification; and one of the exceptions is that if the servant in doing what he did at the time of his injury conformed to customary methods of work, the question whether he was negligent in choosing the dangerous method is one for the jury.

**6. ————: Rules: Inapplicable.** It is not error to refuse an instruction declaring that the defendant had in force and effect at the time of the switchman's injuries a rule forbidding him to go between moving cars, where there is no evidence that the rule offered in evidence was in any way applicable to the character of work in which he at the time was engaged.

**7. EXCESSIVE VERDICT: $40,000: Permanent Injuries.** Plaintiff, a switchman, thirty-three years of age, six feet high and weighing 180 pounds, was rolled in the eight-inch space between a concrete wall and a freight car. At the time he was earning $178 per month. At the time of the trial, twenty months later, he was still grievously afflicted in heart, lungs, shoulders, hands, bones and kidneys and is permanently incapacitated to perform manual labor, but it is extremely improbable that at his age he will be compelled to spend the remainder of his life in idleness. The jury returned a verdict for $60,000, and the trial court required him to remit

$20,000 of the amount.  **Held,** that the judgment will be affirmed only on condition that he remit $15,000 more as of the date of the verdict.

Corpus Juris-Cyc. References: **Damages,** 17 C. J., Section 408, p. 1095, n. 86.  **Master and Servant,** 39 C. J., Section 1314, p. 1120, n. 74; Section 1398, p. 1212, n. 25; Section 1402, p. 1221, n. 72; Section 1403, p. 1222, n. 87; Section 1413, p. 1231, n. 68; Section 1426, p. 1247, n. 73; Section 1431, p. 1251, n. 11.  **Negligence,** 29 Cyc., p. 639, n. 4.  **Trial,** 38 Cyc., p. 1636, n. 24; p. 1667, n. 85.

Appeal from Jackson Circuit Court.—*Hon. Edward E. Porterfield,* Judge.

AFFIRMED  (*upon condition*).

*S. W. Sawyer, George J. Mersereau, John H. Lathrop* and *Eugene E. Montgomery, Jr.,* for appellant.

(1)   The plaintiff was not entitled to recover, for his own acts were the sole cause of his injuries.   (a)   Great Northern Railway **v.** Wiles, 240 U. S. 444; Lang v. Railroad, 255 U. S. 455; Gleason v. Railroad, 73 Fed. 647; Davis v. Hand, 290 Fed. 73; Doerr v. Brewing Association, 176 Mo. 547; Smith v. Box Co., 193 Mo. 715; Yoakum v. Lusk, 223 S. W. 53.   (b)   Test of proximate cause is whether the act which followed could have been reasonably anticipated.   De Moss v. Railways Co., 296 Mo. 526; Borack v. Safe Co., 288 Mo. 83, 231 S. W. 623.   (2)   The court erred in refusing to give defendant's requested instructions numbered seven and nineteen, for by such refusal the defendant was deprived of the right to have the jury say whether plaintiff's negligence was the sole cause of his injuries. Root v. Railroad, 237 Mo. 653; Jennings v. Cooper, 230 S. W. 328; Moore v. Railroad, 146 Mo. 572; Pankey v. Railroad, 180 Mo. App. 185; Yoakum v. Lusk, 223 S. W. 53.   (3)   The court erred in giving plaintiff's instructions.   Plaintiff's Instruction B in particular was erroneous, as it omitted necessary elements and assumed matters in issue.   Foster v. Davis, 252 S. W. 433; Union Pacific v. Brady, 161 Fed. 719.   (4)   The verdict was so grossly excessive as to conclusively show passion and prejudice of the jury, and the judgment as reduced by the trial court is still grossly excessive.   (a)   The case should be reversed and remanded.   Partello v. Railroad, 217 Mo. 645; Gibney v. Transit Co., 204 Mo. 704.   (b)   The judgment should in any event be reduced by more than one-half.   Varley v. Taxicab Co., 240 S. W. 218; Meeker v. Light & Power Co., 279 Mo. 574, 216 S. W. 923; Gordon v. Railway, 222 Mo. 516; Finnegan v. Railroad, 261 Mo. 481; Markey v. Railroad, 185 Mo. 348; Turnbow v. K. C. Railways, 277 Mo. 644, 211 S. W. 41; Looff v. K. C. Railways, 246 S. W. 578; Pyle v. Light & Power Co., 246 S. W. 979.

*Max M. Muenich* and *Madden, Freeman & Madden* for respondent.

(1) Defendant is liable for plaintiff's injuries. (a) The act of plaintiff in going between the cars was not in law the sole cause of his injury. Federal Safety Appliance Act, sec. 2; Federal Employers Liability Act, secs. 3, 4. Possible negligence of plaintiff does not bar this action. Great Northern Ry. v. Otos, 239 U. S. 349; Central Vermont Ry. Co. v. United States, 205 Fed. 40; United States v. Railroad, 157 Fed. 893; United States v. Philadelphia Railroad, 160 Fed. 698; United States v. Atchison Railroad, 167 Fed. 696; United States v. Baltimore Ry., 170 Fed. 456. Breach by plaintiff of rules of defendant cannot foreclose him here. Noel v. Ry. Co., 182 S. W. 787; Jordan v. Ry. Co., 271 S. W. 997; Moore.v. Ry. Co., 268 Mo. 31, 186 S. W. 1035. (b) Defendant's breach of the Safety Appliance Act contributed to plaintiff's injury. Shafir v. Sieben, 233 S. W. 423; Spokane Railroad v. Campbell, 241 U. S. 497; Railroad v. Wagner, 241 U. S. 476; Chicago Railroad v. Schendel, 267 U S. 289; Railroad v. Layton, 243 U. S. 617; Lorton v. Railroad, 267 S. W. 385; Foster v. Davis, 252 S. W. 413. (2) Refusal of defendant's instruction number seven was not error. Sutter v. Kansas City, 138 Mo. App. 113; Hudgings v. Burge, 194 S. W. 886; Edwards v. Lee, 147 Mo. App. 38; Seago v. Realty Co., 185 Mo. App. 298; Taussig v. Railroad, 186 Mo. 269; Meiners v. St. Louis, 130 Mo. 286; Burdoin v. Trenton, 116 Mo. 358; Warder v. Seitz, 157 Mo. 140; Clark v. Railroad, 234 Mo. 428; Chicago Railroad v. Brown, 229 U. S. 317; Railroad v. Wagner, 241 U. S. 476; Railroad v. Campbell, 241 U. S. 497; Railroad v. Schendel, 267 U S. 289; Cent. Vermont Ry. v. United States, 205 Fed. 40. (3) Refusal of defendant's instruction number nineteen was not error. Stuart v. Dickinson, 290 Mo. 516; Moore v. Ry. 268 Mo. 31; Jordan v. Ry., 271 S. W. 997; Great Northern Ry. v. Otos, 239 U. S. 349; Railroad v. Campbell, 241 U. S. 497; Railroad v. Wagner, 241 U. S. 476; Schendel v. Chicago Ry., 198 N. W. 450; Great Northern Ry. Co. v. Otos, 150 N. W. 922. (4) Plaintiff's Instruction "B" was proper. Chicago Ry. v. United States, 211 Fed. 12; Sacre v. Terminal Ry., 260 S. W. 85; Soltesz v. Belz Co., 260 S. W. 990; Sturgis v. Rys., 228 S. W. 861; State ex rel. v. Reynolds, 257 Mo. 39; Lorton v. Mo. Pac. Ry., 267 S. W. 385; Central Vermont Ry. v. United States, 205 Fed. 40; United States v. Baltimore Ry., 170 Fed. 456; O'Leary v. Steel Co., 303 Mo. 363; Costello v. Kansas City, 280 Mo. 1. c. 592. (5) The injuries plaintiff sustained warrant both the original verdict and the present judgment. Gill v. Baltimore Railroad, 259 S. W. 98; Varley v. Taxicab Co., 240 S. W. 218; Meeker v. Union Power Co., 270 Mo. 574; Zumwalt v. Railroad, 266 S. W. 717; Huggins v. Coast Line, 96 S. C. 267; St. Louis Railroad v. Webster, 99 Ark. 256; Wilson v.

316 Mo.—79.

Railroad Co., 194 Ill. App. 491; Rock Island v. Steele, 254 S. W. 503; O'Hara v. Davis, 192 N. W. 215; Hart v. Ry., 264 S. W. 902; T. & P. Ry. Co. v. Matkin, 142 S. W. 604.

RAGLAND, J.—This case comes to the writer for opinion on reassignment. It is an action for personal injuries alleged to have been negligently caused, and is bottomed on the Federal Employers' Liability and Safety Appliance acts.

The plaintiff was in the employ of defendant as switchman. The casualty occurred August 19, 1921, while a switching operation was in progress near the loading docks of the Montgomery Ward & Company plant in Kansas City, Missouri. Defendant's main yard was located at Armourdale across the State line, in Kansas. According to the custom in vogue at that time, defendant hauled empty freight cars from its main yard each morning and placed them alongside the docks just mentioned to be loaded. Late in the afternoon it took the loaded cars to its main yard to be there distributed to certain interstate carriers. The loading dock with which we are concerned extended north and south. It was five hundred feet long, about five feet high and was constructed of concrete. Paralleling it and immediately west of it there were two tracks of railroad. The space between the side of an ordinary box car standing on the east track and the dock was eight inches. The two tracks just referred to came together at a switch which was eighty feet north of the north end of the dock. They were owned by Montgomery Ward & Company, but they connected with defendant's tracks, and through an arrangement with the owner were used daily by it for the purposes just mentioned. On the afternoon of the day heretofore referred to, when defendant's switching crew came to remove the loaded cars to its main yard, there were seven cars standing on the east track along the dock. All were loaded and ready to be moved except the sixth car, counting from the north. The sixth was partially loaded. In order to get all the loaded cars and leave the sixth it was necessary to couple all of them together, pull them north past the switch, kick the seventh south on the west track, pull north of the switch again and then kick the sixth south on the east track. This was undertaken. The three members of the crew immediately engaged in the proceeding were the engineer and the two switchmen, plaintiff and one Bagwell. After the seventh car had been shoved down on the west track and the engineer had pulled the string of cars north again past the switch, he then proceeded to move (push) them south onto the east track, the switch having been thrown in the meantime. Bagwell was standing on the east side of the track near the switch, and plaintiff was on the east side about midway between the switch and the dock, that is, about forty feet north of the north end of the dock. The switching opera-

tion then to be performed was this: When the north end of the sixth car reached plaintiff, he was to uncouple the sixth from the fifth and then give the engineer a stop signal, so that the engine and the string of five cars would come to a stop and the sixth roll on south alongside the dock. When the cars approached plaintiff they were moving at the rate of from five to six miles an hour. According to plaintiff's testimony: As the north end of the sixth car came along he grasped the lever of the automatic coupler by which the lock pin is raised so as to permit the opening of the knuckles, and endeavored to lift the pin. The effort was not successful, so he "trotted" along with the car and tried a second time to lift the pin with the lever, but without avail. He then discovered that the chain connecting the end of the lever with the top of the pin was too long, that by reason of the "slack" in the chain the pin could not be lifted with the lever. He then let loose of the lever, and reached over between the cars and with his right hand lifted the pin on the fifth car (the pin lift lever of that car was on the opposite side), at the same time giving a stop signal with his left. At the time he completed the uncoupling and was turning from the opening between the cars, he was eight or ten feet from the dock and could have gotten entirely away from the cars before he reached it had his action not been impeded by the catching of his clothing on some projection from the corner of the fifth car. As it was he was caught by that car and rolled in the eight-inch space between its side and the dock. The evidence bearing on the nature and extent of his injuries caused thereby will be referred to in a subsequent paragraph.

According to defendant's witnesses, Bagwell, the foreman of the crew, who was back some distance on the loading dock walking north, and the engineer, plaintiff grasped the pin lifter at the north end of the sixth car when it reached him and thereafter "trotted" along beside the moving car, trying all the while to lift the pin, until he reached the dock, when he was drawn into the narrow space between it and the car. They did not see him reach in between the cars at any time.

There was nothing unusal in either the movement or the speed of the engine or cars. The plaintiff was entirely familiar with the relative positions of the loading dock and the track and he knew that there was not sufficient space between the dock and cars moving along the track for him to stand or work. He admitted that when he discovered that the pin lifter would not work, he could by signal have stopped the moving cars and then gone in between them and lifted the pin; but he testified that that was not the customary way of doing the work in which he was then engaged, and there was no evidence to the contrary.

Defendant introduced in evidence its book of rules, calling specific attention to Rule No. 1017, under the heading, "Rules for Passenger Brakemen." After setting forth certain requirements with reference to "the making up, switching and putting away of the train," the rule contained this injunction: "Never go between the cars for the purpose of coupling or uncoupling, or the making of any adjustments, without first notifying the engineman and properly protecting yourself." The engine and train of cars which were moving in the switching operation in which plaintiff was injured did not constitute a "train" as elsewhere defined in the book of rules. Prior to his injury plaintiff had signed and delivered to defendant a questionaire submitted by it to its brakemen calling for their knowledge touching certain of defendant's rules. In answer to the question whether he understood the provisions of Section 1017, plaintiff said "yes." And in answer to the question: "Do you understand that you must not go between cars while they are moving?" he had written "yes." This last question apparently referred to a rule designated "Special 48." but no such rule was put in evidence. Plaintiff testified that at the time he gave these answers he was working as a switchman in the passenger service and as such helped make up "live" trains.

The petition after setting forth the time, place and manner of plaintiff's injury alleged:

"That the defendant was negligent in that the coupler between said cars heretofore mentioned was defective in that it failed to operate by means of the pin lifting device requiring plaintiff to enter between the ends of the cars to uncouple same as aforesaid."

The answer averred that plaintiff's own negligence and his violation of certain of defendant's rules, heretofore referred to, were the sole causes of his injuries. It further pleaded contributory negligence and assumption of risk.

At the close of plaintiff's case in chief and again when all the evidence was in, defendant asked an instruction in the nature of a demurrer to the evidence. The request was in both instances refused.

At the instance of plaintiff the court gave, among others, Instruction B, as follows:

"If you believe and find from the evidence that the defendant at the time and place in question was engaged in commerce between states as defined in Instruction A, then it was the duty of defendant not to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers which could be uncoupled without the necessity of men going between the ends of the cars, and if you believe and find from the evidence that at the time and place in question the car which was to be cut off was not equipped with a coupler which could be uncoupled on the east

side of the cars without the necessity of plaintiff going between the ends of the cars, then the defendant was guilty of negligence, and if you believe and find from the evidence that as a direct result of said negligence, if any, plaintiff had to and did go between the ends of the two cars to uncouple them and that as a direct result of going in between the ends of the cars to uncouple them, he was caught, rolled and injured between the loading dock and the car, then your verdict should be in favor of the plaintiff.

"You are further instructed in this connection that if defendant was negligent as above defined and that as a direct result thereof plaintiff was injured, then the plaintiff did not assume the risk of being injured by going between the ends of the two cars to uncouple them, if you so find, nor does the contributory negligence of plaintiff, if you find that he was negligent in going between the ends of the cars, constitute any defense to his cause of action, nor should such contributory negligence, if any, diminish his damages, if any."

Defendant requested, and the court refused Instructions 7 and 19, as follows:

"7. The court instruct the jury that if you shall find and believe from the evidence that there were two ways in which plaintiff could have performed the work in which he was engaged at the time of his injuries, one of which was safe and the other dangerous, if you so find, and if you shall further find from the evidence that he chose the dangerous way to do said work and solely by reason thereof received the injuries complained of, then you are instructed that the plaintiff cannot recover in this case and the verdict must be in favor of the defendant.

"19. The court instructs the jury that the defendant had in force and effect at and prior to the time of plaintiff's injuries, a rule, requirement or instruction as follows:

" '48 *Special.* Do you understand that you *must not go* between cars *while they are moving?*'

"That such rule, requirement or instruction had been submitted to the plaintiff in a written examination as a switchman and he had answered it, 'Yes.'

"The court instructs the jury that if you find and believe from the evidence that the plaintiff did go between the cars while they were moving then the plaintiff was negligent and if you find such negligence was the sole proximate cause of his injuries, if any, then plaintiff cannot recover and your verdict must be for the defendant."

A verdict was returned for plaintiff, assessing his damages at $60,000. As a condition for overruling the motion for a new trial, the trial court required the plaintiff to enter a *remittitur* of $20,000. The case is here on defendant's appeal.

As grounds for reversal appellant assigns: (1) The refusal of its demurrer; (2) the giving of plaintiff's Instruction "B;" (3) the refusal of its Instructions 7 and 19; and (4) excessiveness of the verdict.

I. Appellant's first assignment is based on its contention that as a matter of law the proximate cause of plaintiff's injuries was his own negligence: (1) in going between the moving cars to uncouple them under the circumstances shown by the evidence, and (2) in going between moving cars in violation of de-

**Proximate Cause: Question for Jury.**
fendant's rules. The question of proximate cause, as a general rule, is one for the jury. On the facts of this case it was clearly so; it was for them to determine whether there had been a violation by defendant of the Safety Appliance Act, and, if so, whether such violation "contributed to the injury" of plaintiff. [35 U. S. Stat. at L. 66; Chicago Great Western Railroad v. Schendel, 267 U. S. 287; Spokane Railroad v. Campbell, 241 U. S. 497; Great Northern Railway Co. v. Otos, 239 U. S. 349; Central Vermont Railway Co. v. United States, 205 Fed. 40; Jordan v. Railroad, 271 S. W. 997; Foster v. Davis, 252 S. W. 433; Moore v. Railroad, 268 Mo. 31; Noel v. Railroad, 182 S. W. 787.]

II. It is claimed that Instruction "B" was erroneous in that it assumed that the car with the alleged defective coupler was being used by defendant on "its line." It was tacitly conceded by both parties, as the evidence on the part of both tended to show, that the

**Instruction.**
tracks were owned by Montgomery Ward & Company, but that they were rightfully used by defendant in bringing cars to and removing them from the loading docks. And it was not error to assume in the instruction the existence of uncontroverted facts. The tracks so used by defendant as licensee or through an arrangement with the owner were a part of "its line" within the meaning of the Safety Appliance Act. [Chicago Railway Co. v. United States, 211 Fed. 12.]

The instruction is next criticized on the ground that it did not require the jury to find "that plaintiff gave the automatic appliance a proper trial." The ultimate fact that was to be submitted to the jury for their finding was that the car was not equipped with a coupler which could be uncoupled "without the necessity of men going between the cars," and that the instruction did. Appellant's criticism goes merely to the sufficiency of the proof. With respect to that the evidence tended to show a specific defect which effectually prevented the coupler from operating, it left nothing to conjecture or opinion.

It is said further that the last paragraph of the instruction assumed that plaintiff went in between the ends of the two cars, and that his negligence, if any, was "contributory negligence." The direction given in this part of the instruction, according to its plain language, was applicable only in the event that the jury had previously found, under the preceding paragraph, that the defendant was guilty of the negligence charged, and that as a direct result of such negligence plaintiff had to go and did go in between the ends of the two cars to uncouple them, and that as a direct result of so going between the cars he was injured. There is no merit in this criticism.

Finally it is contended that the subject of contributory negligence had no place in the instruction at all, and that the language with reference to it was an insidious invitation to the jury to be liberal in their estimate of plaintiff's damages. The petition contained charges of negligence other than a violation of the Safety Appliance Act, and the answer with reference to those other charges set up contributory negligence. When upon submission of the case the charges with respect to which contributory negligence was a defense, in whole or in part, were abandoned, it was proper in reforming the issues for the jury to withdraw that defense from their consideration. We find nothing in the language of the instruction calculated to bring about an erroneous assessment of the damages.

III. 1. The rule, that when there are two methods available to a servant for the performance of the work in hand, one safe and the other obviously dangerous, and he selects the latter he is guilty of negligence as a matter of law, is not without qualification. One of the qualifications to which it is subject is this: If the servant, in doing what he did at the time of the accident, conformed to customary methods of work, the question of whether he was negligent is for the jury. [Labatt's Master & Servant (2 Ed.) secs. 1263 and 1269.] According to the evidence, plaintiff, when he discovered that the pin-lifting device would not work, could have stopped the cars and then with perfect safety gone in between them and pulled the pin or gone around them and raised the pin with the lever on the other car which was on the opposite side from him, or he could do as he did, which was obviously dangerous. But the first method, he testified, was not customarily employed by defendant's switchmen in the character of work he was then doing; by implication the latter method was. Instruction No. 7, without taking into consideration the evidence as to the customary way of doing the work, declared, in effect, that plaintiff in going in between the cars was guilty of negligence as a matter of law. It was therefore properly refused.

**Two Ways.**

2. There was nothing in the evidence to indicate that the "rule,
requirement or instruction" referred to in Instruction No. 19 was
**Rule.** in any way applicable to the character of work in which
plaintiff was engaged at the time of his injury; there was
some evidence to the contrary. The refusal of the instruction was
not error.

IV. At the time of his injury plaintiff was thirty-three years of
age, about six feet in height, weighed one hundred and eighty-eight
pounds, had a normal body and was in the enjoyment of vigorous
health. He was earning on an average of $178 per month. The
evidence meticulously describes the fractures, lacerations and bruises
of the tissues caused by the rolling of his body in the eight-inch
space between the car and the concrete wall of the loading dock,
the medical and surgical treatment he underwent during the period
of thirty-eight days in which he was in the hospital and the pain
suffered by him at each stage. A statement of these matters we omit
and go at once to his condition as it appeared at the time of the trial,
nearly twenty months after his injury.

According to plaintiff's evidence: The thoracic cavity had been
greatly reduced by the over-lapping of the ribs, most of which had
been broken and permitted to re-unite without having been put in
apposition. There was a general prolapsus of all the internal organs.
The heart was crowded further over to the left and downward. The
lungs were more or less cramped and the liver and intestines were
somewhat lower than normal. The chest measured thirty-four inches;
on inspiration it remained thirty-four inches; on expiration it was
thirty-three. From expiration to inspiration the normal expansion
is three and one-half inches. There was a slight lateral curvature
of the spine; he seemed to "favor" one side when standing. Both
clavicles had been broken as had been one of the metacarpal bones of
the right hand; the scapula of the right shoulder was permanently
dislocated. Both shoulders drooped; and when standing there was
a tremor in the muscles of his legs from his hips down. The heart and
lungs, because of lack of space, were not functioning properly; the
lungs were congested and showed some slight evidences of a tuber-
cular condition; and his heart was becoming hypertrophic. The
kidneys were not organically affected, but had manifested some func-
tional irregularities.

Plaintiff could walk without the aid of crutch or cane, and could
walk as far as eight or ten blocks before having to stop to rest. Any
unusual exertion, however, caused him to become dizzy and faint.
He was extremely nervous, but his reflexes showed that there had been
no organic injury to the central nervous system. The physician who
testified as an expert for defendant examined plaintiff a day or two

before the trial and found no evidences of organic trouble with respect to either heart or lungs, nor did he discover any functional disturbance as to either. He did agree, however, with plaintiff's physicians, that plaintiff was permanently incapacitated so far as the performance of manual labor was concerned.

The present value of plaintiff's earnings, if computed for the whole of his life expectancy at $178 per month, would be approximately $27,000. While the evidence shows that he has never been employed in any but manual labor, it also shows that he is comparatively young; and while he may not again enjoy the same vigorous health that was his before his injury, it is extremely improbable that he will spend the remainder of his life in idleness. There is of course no legal yardstick by which the damages in a case such as this can be measured with precision. Nor are the facts bearing on the measure of damages exactly the same in any two cases. Yet in a very general way our precedents do afford a standard to which we constantly endeavor to conform. In view of such precedents we are of the opinion that the judgment is still excessive by $15,000.

The judgment of the circuit court will be affirmed on condition that plaintiff enter here, as of the date of the original judgment, a *remittitur* in the sum of $15,000; otherwise the judgment will be reversed and the cause remanded for another trial. All concur, except *Gantt, J.*, not sitting.