# OCTOBER, 1928.

---

BURNICE CREGGER, RESPONDENT, v. CITY OF ST. CHARLES, APPELLANT.*
—11 S. W. (2d) 750.

St. Louis Court of Appeals.  Opinion Filed December 4, 1928.

*Corpus Juris-Cyc. References: Evidence, 22CJ, section 27, p. 84, n. 71; Motor Vehicles, 42CJ, section 569, p. 868, n. 47; section 576, p. 872, n. 3; Negligence, 45CJ, section 477, p. 898, n. 15; section 481, p. 910, n. 61; section 490, p. 930, n. 35, 41; section 880, p. 1321, n. 36.

234

*William F. Achelpohl, Theodore C. Bruere* and *Hensley, Allen &
Marsalek* for appellant.

*B. H. Dyer, Ww. F. Bloebaum, Alvin H. Juergensmeyer* and *Hostetter & Haley* for respondent.

BENNICK, C.—This is an action brought by the widow for the wrongful death of her husband. The verdict of the jury was for plaintiff, in the sum of $3500; and, from the judgment rendered, defendant has duly appealed.

In her petition, plaintiff alleged the existence of a much traveled street in defendant city, known as Kingshighway; that it was the duty of defendant to keep the same in repair, and free from dangerous holes and defects; that, on December 12, 1925, the date of decedent's death, and for a long time prior thereto, there was a hole in Kingshighway near its intersection with Sibley street; that, on account of said hole, the condition of Kingshighway was dangerous with respect to persons traveling thereon and desirous of turning into Sibley street; that, on the day in question, decedent, at the invitation of one Summers, was riding behind the cab of a truck, operated by Summers, southwardly on Kingshighway; that Summers endeavored

to turn to the right into Sibley street; that one of the wheels of the truck dropped into, and passed through, said hole, producing such an unusual jar and jolt of the truck as to throw decedent out of the same on the hard-surfaced street, whereby he was killed; that defendant had actual or constructive knowledge of the existence of the hole, and the danger arising therefrom to persons using the street; and that defendant, with said knowledge, negligently permitted the hole to remain, and failed to repair it, which said negligence directly and proximately caused the death of decedent.

The answer of defendant was a general denial.

While the directions we shall give are not entirely accurate, it tends to an easy understanding of the situation, and does no violence to the rights of either party, to say that Kingshighway runs from north to south, and that Sibley street, extending from west to east, intersects, but does not cross, Kingshighway on the west. At the time of the casualty, Kingshighway was constructed with a rock foundation covered with macadam, and was one of the principally traveled streets of the city. At the intersection of the two streets there was a brick walk, extending across, and within, Sibley street, parallel to the west line of Kingshighway.

A break in the surface of the macadam, following a washout, had caused a hole to form in Kingshighway, the location of which was variously estimated at from six to ten feet east of the west curb of Kingshighway, and from eight to eighteen feet north of the north line of Sibley street. The hole, which was about two feet in length, and the same distance in width, was not abrupt, but sloped down to the center, where its greatest depth, of five or six inches, was to be found. It was shown that the hole had existed in the surface of the street for as much as two months prior to the day in question, and was not repaired by the city until within one or two hours after the body of the decedent was removed.

Shortly before seven o'clock, on the morning of December 12, 1925, one Robert M. Summers was driving southwardly on Kingshighway toward Sibley street in his Ford truck, accompanied by two other men, one of whom was sitting with Summers in the seat, while the other sat in the door of the cab with his feet resting upon the running board. The truck was constructed in the ordinary manner, having a cab in the front, extending three feet, or slightly more, above the floor of the bed, which was five feet in width, and eight feet in length, with sides seventeen inches in height. The rear spring and the tires of the truck were described as solid. Approximately two blocks north of Sibley street, Summers observed decedent, with whom he had been acquainted for seven or eight months, walking southwardly on the sidewalk on the west side of Kingshighway, carrying his dinner pail in his hand; and he invited the latter to ride to work in the truck, as he had also had occasion to do on the previous morning. Decedent,

who was about six feet in height, climbed into the bed of the truck, and stood with his left hand on the top of the cab, meanwhile holding his dinner bucket in his right hand, after which he was never again seen alive.

As Summers approached Sibley street, he veered his course slightly to the left towards the center of Kingshighway, to make a right-hand turn, and, just as he did so, his right rear wheel dropped into, and passed through, the hole at a point three or four inches from its edge, producing "quite a little jar," as well as a "considerable jerk" when the wheel left the hole. He made the turn at a speed of twelve or fifteen miles an hour, and continued onward to his destination, when it was found that decedent was missing. Summers and his companions thereupon retraced their course in search of decedent; and, when they arrived at the intersection of Kingshighway and Sibley streets, they saw his body lying in the street, having meanwhile been discovered by one East, a delivery boy, at approximately ten minutes of seven o'clock.

The body was resting on the stomach, and lay diagonally in the street, with the head to the north and facing west, and the feet towards the south. The head was at or near the brick cross-walk, at a point twenty-one feet from the north curb of Sibley street, while the feet were two feet north of the south line of Sibley street, and extended out into Kingshighway for a distance of two and one-half feet. Upon an examination, it was found that the upper and back portion of the head was bruised, with the skull fractured in two places, and that the right ear was almost entirely severed. There were also marks present on the surface of the street which indicated that the body had slid for a distance of sixteen inches from a point east of where it was lying, and nearer to the center of Kingshighway.

There was further evidence that the position of the body was to the left, and south, of the point where Summers had made the right-hand turn, and that the head was thirty-eight feet from the hole in the surface of Kingshighway, if the platted measurements are to be taken as accurate.

It is also pertinent to add that the facts heretofore detailed come wholly from plaintiff's side of the case, defendant having contented itself with offering no evidence save for a plat of the scene of the accident, which it had had prepared.

The only point urged by defendant on this appeal is that its peremptory instruction in the nature of a demurrer to the evidence, requested at the close of the whole case, should have been given.

In support of its contention, defendant first argues that the burden was upon plaintiff to prove that her husband's death was proximately caused by the negligence of defendant in permitting the hole to be and remain in the street; that the facts and circumstances shown in

evidence, instead of tending to support such theory as the probable explanation of the accident, demonstrated conclusively, to the contrary, that the turning of the truck around the corner was the cause of the decedent's fall and death; and that, in view of the complete failure of proof upon plaintiff's theory of the accident, the lower court should have directed a verdict for defendant.

Bearing in mind the testimony from plaintiff's own side of the case, that decedent's body was found to the left, and south, of the point in the intersection of the two streets where the driver of the truck made the right-hand turn, and thirty-eight feet from the hole in the surface of Kingshighway, it would be folly, in the light of the common knowledge of mankind, to say that the turning of the truck played no part in causing the body to fall where it did. However, it by no means follows that the turning of the truck was the sole and proximate cause of the casualty itself, since the jury, as reasonable men, might very properly and legitimately have found that the dropping of the wheel of the truck into the hole, producing a very perceptible jar and jerk, was sufficient to cause the decedent to lose his balance and fall, standing as he was, with his left hand resting on the bare surface of the top of the cab, and his right hand encumbered with his dinner pail. That such consequence was highly probable is obvious, when we consider that the jar and jerk came as the truck was driven into the hole at a speed of at least twelve or fifteen miles an hour, and that the tires and rear spring of the truck were solid. Aside from the presumption which exists that the decedent was in the exercise of due care, in the absence of competent proof to the contrary, there is nothing in the evidence to indicate that he had ever ridden over the street except upon one former occasion, or that he even knew that the hole was in the street, so that he might have been impelled to secure a firmer grip, if possible, in order to have counteracted the force and effect of the jar.

Proximate cause is commonly, and best, defined as that cause which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred. [Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S. W. 475; Jaquith v. Fayette R. Plumb, Inc. (Mo. Sup.), 254 S. W. 89; Northern v. Chesapeake & Gulf Fisheries Co. (Mo. Sup.), 8 S. W. (2d) 982; George v. Kansas City S. Ry. Co. (Mo. App.), 286 S. W. 130; 45 C. J. 898.] In other words, it is sufficient to constitute proximate cause that the negligence for which recovery is sought was the efficient cause which set in motion the chain of circumstances leading up to the injury itself (Wengert v. Lyons (Mo. App.), 273 S. W. 143; Strayer v. Quincy, O. & K. C. R. Co., 170 Mo. App. 514, 156 S. W. 732; and the primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole,

the first so operating upon the others as to make it primarily productive of the injury. [Wengert v. Lyons, supra; Johnson v. Ambursen Hydraulic Construction Co., 188 Mo. App. 105, 173 S. W. 1081; 45 C. J. 910.]

In determining whether the continuous sequence of events has been broken by an efficient intervening cause so as to constitute the latter the proximate cause of the injury, it is understood that for a cause to be properly denominated as efficient and intervening, it must be a new and independent force or agency which breaks the chain of causal connection between the original wrong and the final consequence. Such intervening act or event must be sufficient to stand of itself as the cause of the injury, and be one but for which the injury would not have occurred; and if the new cause serves merely to accelerate the effect of an original cause, which alone was sufficient to produce the injury, the first cause will still be considered the proximate cause. [45 C. J. 930, and cases cited.]

Moreover, in this same connection it is significant to note that the courts, in dealing with this ever troublesome question, have found 'it to be the part of wisdom to announce a further rule, which is that the question of proximate cause is ordinarily, although concededly not always, a question for the jury. [Northern v. Chesapeake & Gulf Fisheries Co., supra; Hogan v. Fleming, 317 Mo. 524, 297 S. W. 404; Lovett v. Kansas City T. Ry. Co., 316 Mo. 1246, 295 S. W. 89; Kidd v. Chicago, R. I. & P. Ry. Co., 310 Mo. 1, 274 S. W. 1079.]

Applying the above elements of the doctrine under discussion to the particular facts of this case, we are convinced that it was properly for the jury to say whether the negligence of defendant in allowing the hole to remain in the street was the proximate cause of the decedent's fall and death. We have heretofore approved the legitimacy of the inference that the jar of the descent of the wheel into the hole resulted in decedent's losing his balance, to which may be added that it was also fairly inferable that such jerk or jar would have been sufficient to have caused him to fall from the truck had no turn been made, not under any and all circumstances, but in view of the peculiar situation in which he was placed. The causal connection between the loss of balance and the fatal injury was in nowise broken by the fact of the turn, although it may be quite true that the change of the course of the truck accelerated the original consequence of the jerk, at least in so far as it determined upon which side of the truck decedent should fall. However, we have heretofore stated, that the mere acceleration of an original cause, itself sufficient to produce the injury, is not the appearance of a new and independent efficient agency, so as to render the latter, rather than the first, event the proximate cause, within contemplation of law. Here there is no violence done to the facts in evidence, or to the ordinary experience of mankind, to say that the dropping of the wheel into the hole in the

street, with the resultant jar and jerk, set in motion an unbroken chain of circumstances which directly led up to the fall of decedent from the truck, and was so connected to the succeeding events, that is, to the turn, that all beame a continuous whole. We repeat, therefore, that the argument advanced by defendant is not well taken, and that the question of whether the maintenance of the hole in the street was the proximate cause of decedent's death, was one for the determination of the jury.

Defendant's next point is closely associated with its first, namely, that plaintiff's own evidence disclosed two possible causes for the accident, one, the jarring of the truck as the wheel dropped into the hole, and the other, the turning of the truck around the corner at a speed of twelve or fifteen miles an hour; that the case comes within the rule that, where the evidence shows that the injury might have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show, with reasonable certainty, that the cause for which the defendant is liable produced the result; and that plaintiff must fail in this action because the evidence adduced leaves the true cause of decedent's fall and death to speculation and conjecture.

This contention is disproved from the fact that the two designated causes were not distinct and independent, but were of such nature that the turning of the truck merely added to the effect of the jar, as we have heretofore said. In the absence of proof that decedent was accustomed to driving over Kingshighway, in the vicinity of the hole, it is entirely reasonable to infer that he was unaware of the danger to be avoided on account of the same; while, on the other hand, he had been working on the same job with Summers for as much as a week, in consequence of which he must have known the route to his destination, and would the more likely have seen to his security in making the turn, which he was bound to have expected, and which he could readily have perceived as he looked ahead over the top of the cab. We conclude, therefore, that plaintiff bore her burden of showing with reasonable certainty that the jarring of the truck was the proximate cause of her husband's misfortune, and that it cannot properly be said, on demurrer to the evidence, that the matter was left solely to speculation and conjecture, as defendant would have us believe.

For its final point, defendant argues that the conclusion that the deceased was thrown from the truck by reason of the dropping of the wheel into the hole can be arrived at only by piling inference upon inference, tat is, by first inferring that he was thrown from the truck, and then, upon such inference, basing the further inference that the cause of the fall was the presence of the hole in the street.

It cannot be denied that the conclusion that the decedent fell from the truck rests upon an inference, but it does not follow that the

second inference is built upon the first. There is no limit to the number of inferences which may be drawn in a given case, provided each rests upon its own facts in evidence, and is not based upon another or preceding inference. In the case at hand, the inference that the jarring of the truck was the proximate cause of decedent's fall does not rest upon the inference that he fell, coupled with the mere fact that there was a hole in the street near where the body was found. To the contrary, it is founded upon the positive testimony relative to the decedent's insecure position in the truck, and the severity of the jar or jerk felt by Summers when the wheel dropped into the hole. Consequently, having been a rational deduction from the facts in proof, the inference that the jar was the proximate cause of the fall is legitimate, and defendant's argument to the contrary must be disallowed.

All objections to the propriety of the court's ruling on the demurrer to the evidence having been disposed of, it follows that the judgment rendered must be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.