MAGGIE JENKINS, RESPONDENT, v. SPRINGFIELD TRACTION COMPANY, A CORPORATION, APPELLANT.—96 S. W. (2d) 620.

Springfield Court of Appeals. September 8, 1936.

*S. C. Bates* and *Charles L. Henson* for appellant.

*Orville F. Kerr* and *George H. Skidmore* for respondent.

SMITH, J.—This cause was instituted and tried in the Circuit Court of Greene County, which resulted in a verdict and judgment for five hundred dollars in favor of plaintiff.

The theory of the case is clearly set out by the pleadings. Even though it is lengthy, we set out the petition in full, caption and signature omitted, as follows:

"Comes now the plaintiff and for cause of action states that she is a

resident of Greene County, Missouri, and that defendant is and was at all times hereinafter mentioned a corporation organized and existing under the laws of the State of Missouri, with its principal offices and place of business located in the City of Springfield, and that the defendant among other things is engaged in the business of operating street cars and motor busses for hire in said city.

"Plaintiff further states that Monroe Street is a public thoroughfare in the City of Springfield running in an east and west direction, and that upon said street defendant maintains a single line of street car tracking, upon and over which it operates street cars in the furtherance of its business; that Kimbrough Avenue is a public thoroughfare in said city running in a north and south direction, that Kimbrough Avenue and Monroe Streets intersect in a populous residence section of said city; that both Kimbrough Avenue and Monroe Street are paved streets of approximately thirty feet or more in width and that the intersection of said streets is open and presents a clear view for a considerable distance in either direction to a person approaching said intersection.

"Plaintiff further states that on or about the 16th day of October, 1934, she attended a funeral at the Klingner Undertaking Company located in the north part of said City of Springfield; that after said funeral was held a procession of automobiles was formed and said procession traveled from said undertaking company in a southerly direction along Kimbrough Avenue toward the Maple Park Cemetery, located in the south part of the City of Springfield; that the total number of automobiles forming said funeral procession was at least ten or more in number; that plaintiff entered an automobile being driven by and under the control of Mrs. Edna Cline, as a guest of and at the invitation of the said Mrs. Edna Cline for the purpose of attending the funeral services to be held at said cemetery; that the said automobile became a part of said funeral procession and proceeded along at some distance behind the hearse, the car containing the pallbearers, and other cars containing friends and relatives of the deceased.

"Plaintiff further states that the front automobiles forming said procession were marked with small flags attached to the fenders denoting the character of the procession, and that a uniformed policeman of the City of Springfield riding a motorcycle, rode at the head of said procession for the purpose of acting as a convoy and in order to give warning to persons approaching said procession at right angles of its character as a funeral procession.

"Plaintiff further states that as said funeral procession approached the intersection of Kimbrough Avenue and Monroe Streets, the policeman heading the procession drove his motorcycle into said intersection; that at that time a street car of defendant company, operated by

a motorman of the defendant company in pursuance of his employment as the employee, agent and servant of defendant company approached said intersection traveling in a westerly direction along Monroe Street; that the motorcycle policeman sounded a signal upon proceeding into said intersection, but that defendant's motorman carelessly, negligently and without warning drove the street car of defendant into said intersection and upon and against the motorcycle, throwing said motorcycle policeman to the pavement and dragging the motorcycle along the line of defendant's tracks.

"Plaintiff further states that as a direct result of the carelessness and negligence of defendant's motorman as aforesaid, the cars forming said funeral procession came to a sudden and abrupt stop, in order to avoid striking said policeman or street car, and that the automobiles forming said procession began to approach closer together, and that the automobile in which plaintiff was riding ran into and against the automobile immediately in front of it, and was struck from the rear by the automobile immediately behind it, and that by the force and impact of said collision or collisions, directly resulting from the negligence of the defendant's motorman as aforesaid, plaintiff was jostled, shaken and forced against the side and door of the automobile in which she was riding so that the door of said automobile opened, and plaintiff was thrown to the pavement, causing her physical injuries as hereinafter set out.

"Plaintiff further states that her injuries complained of are the direct result of the negligence and carelessness of the operation of the defendant's street car by its employee, agent and servant, and that the employee, agent and servant was negligent and careless in the following particulars.

"1. That defendant's motorman failed to heed or give attention to the signals, warnings and orders of the police officer to stop said street car, and drove said street car into said intersection and upon and against the motorcycle negligently and with a careless disregard for the safety of persons approaching said intersection.

"2. That defendant's motorman failed to keep a vigilant lookout as he drove defendant's street car into said street intersection, and said street intersection is burdened with heavy traffic and is one which requires defendant's motorman to use great care in crossing.

"3. That defendant's motorman negligently and carelessly drove into the line of traffic of said funeral procession causing the said procession to come to an abrupt stop and directly causing the automobiles in said procession to collide with other automobiles.

"4. That defendant's motorman could by the exercise of reasonable care, have seen the approach of said procession and could have stopped the street car in time to have prevented the injuries and damages herein complained of, and that the negligence of said motorman of

1240

defendant corporation was the proximate and concurring cause of plaintiff's injuries and damages.

"5. That defendant's motorman negligently and carelessly drove into said intersection in violation of Section 41, of Ordinance No. 18467 of the City of Springfield, Missouri, which ordinance was then and there in effect having been duly enacted and approved by said city, a municipal corporation organized and existing under the laws of the State of Missouri, said ordinance containing the following provisions:

" 'It shall be unlawful for the driver of any vehicle or motorman of any street car to drive between vehicles comprising a funeral or other authorized procession while in motion, provided that said vehicles are conspicuously so designated. This provision shall not apply at said intersections where traffic is controlled by traffic control signals or police officers.'

"Plaintiff states that by reason of the negligence of said employee, agent and servant of the defendant, the plaintiff suffered the fracture of two ribs, a sprained back, and that the deltoid muscle of her right arm and shoulder was bruised and contused and torn from the attachments, rendering said arm entirely useless, and that she also suffered miscellaneous cuts and bruises.

"Plaintiff further alleges that she has expended and obligated herself to pay considerable sums of money for medicine and medical attention as the direct result of said injuries, and that she will in the future be required to pay large sums for medicine and medical attention.

"Plaintiff states that at the time of receiving her injuries as herein set forth, she was a strong and able-bodied woman, fifty-four years of age, and entirely able to carry on her duties as a housewife in a satisfactory and competent manner but as a result of said injuries she is unable to perform such duties. Plaintiff further states that by reason of her injuries that she has suffered great physical pain and anguish, and will continue so to suffer, that she cannot sleep well at night, on account of her general pain and weakened condition from said injuries.

"Plaintiff states that all of said injuries and damages aforesaid were directly caused by the lack of care of the defendant's motorman and within the scope of his employment as defendant's agent, servant and employee, and that by reason of said negligence and carelessness she is injured to her damage in the sum of Five Thousand ($5,000.00) Dollars, for which sum she prays judgment against the defendant, the Springfield Traction Company, a Corporation, and for her costs herein."

The answer consisted of a general denial, after admitting its incorporation under the laws of Missouri, with its principal office in

Springfield, and engaged in carrying passengers for hire in Springfield.

After the motion for new trial was overruled, the defendant appealed to this court, and the case is before us under one assignment of error, and that is the refusal of the trial court to give its instruction "B", which is as follows: "The court instructs the jury that under the law and all the evidence in this case plaintiff is not entitled to recover and your verdict will be for the defendant."

Since this is the one assignment it necessarily follows that it requires on our part a consideration of the whole of the testimony and the testimony must be viewed in the most favorable light to plaintiff.

There is nothing complicated about the facts in the case. The funeral procession was moving in a southern direction along Kimbrough Street. The motor car was going west on Monroe Street. These streets cross each other. A motorcycle policeman was leading the funeral procession, and as he approached Monroe Street he saw the motor car approaching Kimbrough Street, and saw the motorman looking to the left and away from the approaching funeral procession. The evidence was conclusive to the effect that the motorman could have seen the approaching procession if he had been looking in that direction. The policeman saw the motor car approaching Kimbrough Street, and signalled the motorman to stop. The motorman saw the signal but said he thought it was a signal to proceed and that he undertook to cross the street. We quote from the Abstract a part of his testimony as follows:

"I am employed as motorman for the Traction Company. I was the motorman on the street car, West bound, when the motorcycle hit my car about a year ago at Kimbrough and Monroe Streets. I was coming West, that is a very difficult place to stop, it is hard to stop at any time and at that time the rails were very slippery owing to leaves on the rails. I came slowly to the intersection of the street. I came very slow approaching the street on account of traffic is so heavy there most all of the time, till it is difficult to cross lots of times. I always come slow down there so that I could stop if there was anything happened. I first look to the left, as we always do, then when I turned to look to the right the motorcycle cop had just drove up and stopped. I was something near about twenty feet of him when I saw him and I applied the brakes, when I did so the wheels skidded right out from under me and I skidded across the street before I could get stopped. As I skidded across the street the motorcycle man let his motorcycle roll up against the side of the street car, it pushed it over and pushed it around something like five or six feet and by the time I got stopped and got out he picked up his motorcycle. I had a signal from the motorcycle cop. When I first saw him I thought he had stopped and signalled me to go ahead, that is what I taken it for

but in a moment I saw it was a funeral procession coming. My street car was then in motion. I then applied the brakes and did all that I could to stop. The brakes were the only instrumentality on the car by which I could stop it.

"I couldn't stop it fast enough to keep from hitting the motorcycle.

"I thought the sign or signal the motorcycle officer gave me meant for me to go ahead. Then I saw it was a funeral procession and that he probably didn't mean for me to go on. I thought it was proper to stop for a funeral procession. The kind of sign he gave me when I saw him there, at the moment I saw him, he didn't make any sign, but threw up his hand like that as though he wanted me to go ahead, that he had stopped. So he threw up his hand like that which I thought meant for me to pass on and that he wanted me to go on by, but just in a moment I saw there was a funeral procession coming and of course I began to try to stop."

We also quote from the testimony of the policeman, as follows:

"I was leading the Klein funeral and of course leading for Klingner, they usually come across Benton and Kimbrough going to Maple Park, that is the usual route; we always pull ahead of the procession at intersections, especially if it is a busy intersection or where there is much traffic, and I had pulled some distance ahead of the procession, I won't say how far; a street car had pulled up on the east side of Kimbrough, a street car headed west, and stopped either to load or unload passengers, I wouldn't say which now; I gave him the horn— sounded the horn and pulled on into the intersection; I noticed, I thought at the time that the motorman had seen me—

"By Mr. HENSON, counsel for defendant:

"Q. Thought what? A. I thought the motorman of the street car had seen me leading the procession into the intersection, but I noticed he looked left or looked South and about that time the car started up; well, I tried to apply my brakes, but I was too far into the intersection at the time and the street car hit my motor.

"By Mr. SKIDMORE, continuing direct examination:

"The street car hit my motorcycle and drug it I will say twenty feet, maybe not that far, maybe a little farther. The street car had already stopped when I first saw it. I sounded my horn before I got to the intersection. I went into the intersection and the next time I saw the street car it was in motion at a slow rate of speed. It just started off and wasn't going fast.

"Q. What did you do in that time, between the time the car started and the time it hit you? A. At that time it was pretty close to the track, I cut the motor off and set my brakes, but couldn't get it stopped quick enough and the car caught the back of the fork, I had a crash guard on the motor I was riding at that time, a guard that

extended outside to protect your leg in case of a crash that also caught, just the corner of that against the street car, I should say about eighteen inches of the motorcycle was caught from the tip of the tire to the crash guard, maybe a little more than that.

"Q. Were you upset or not; did you remain on the motorcycle? A. I tried to get off; was finally knocked off.

"Q. You say that the motorcycle was dragged? A. Yes, sir; it was dragged. I couldn't say just how far, but some twenty feet or more.

"Q. Were you immediately ahead of the funeral procession? A. Yes, sir.

"Q. Was the procession in motion or do you know? A. The procession was in motion when the accident happened, after the accident there the procession stopped, the first thing I did was to motion the procession to go on back of the street car, to go on."

"He didn't succeed in stopping the street car until after he collided with me, and didn't stop until he pulled my motorcycle about twenty feet or whatever the distance from the center of the intersection would be to past the curb line. He struck the motorcycle about the center of Kimbrough and Monroe."

Several other witnesses near the front of the funeral procession testified to facts approximately as stated by the policeman and the motorman. As we view it there can be no question but that the collision of the motor car and motorcycle was the cause of the stopping of the funeral procession, and under the testimony of all the witnesses it was a question for the jury as to whether or not the motor man was negligent in the manner of handling the motor car in crossing the street. The serious question before us is whether or not the negligence of the motorman was the proximate cause of the injury to the plaintiff who was riding as a guest in an automobile within the procession six or eight automobiles to the rear of where the street car and the motorcycle collided. None of the automobiles in front of the plaintiff collided with the street car nor with the automobile immediately in front, except the automobile in which plaintiff was riding jammed into the one immediately in front, and the one just behind her jammed into the one in which she was riding, and these collisions caused the plaintiff to be thrown to the ground and injured. There is no question as to her injury, and under this demurrer we are not concerned with the seriousness of her injury nor the amount of her judgment. Since we have determined that whether or not the defendant was negligent in stopping the procession was a question for the jury, we are now confronted with the question as to whether or not the defendant's negligence in causing the procession to stop suddenly was the proximate or concurrent cause of plaintiff's injury in her position in the procession six or eight cars back from the front.

It is the position of the defendant that the plaintiff's injury was caused by the negligence of the driver of the automobile in which plaintiff was riding in driving too close to the car in front of her so that the driver could not stop without colliding with the car immediately in front of her and that the driver in front of plaintiff and the driver of the car in which plaintiff was riding did not signal to the car immediately to the rear to stop, and that those negligent acts were the cause of the injury. As to these contentions on the part of defendant we think they were questions of fact for the jury to determine, and that the trial court could not have sustained the demurrer on that ground.

The question of proximate cause has often been before the courts, and a great deal has been said thereon, and ordinarily the courts have held that the question of proximate cause is for the jury. These questions are discussed at length and pertinently by the St. Louis Court of Appeals in the case of Cregger v. City of St. Charles, 11 S. W. (2d) 750. We quote from that opinion at page 753, as follows:

"(1, 2) Proximate cause is commonly, and best, defined as that cause which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred. [Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S. W. 475; Jaquith v. Fayette R. Plumb, Inc. (Mo.), 254 S. W. 89; Northern v. Chesapeake & Gulf Fisheries Co. (Mo.), 8 S. W. (2d) 982; George v. Kansas City S. Ry. Co. (Mo. App.), 286 S. W. 130; 45 C. J. 989.] In other words, it is sufficient to constitute proximate cause that the negligence for which recovery is sought was the efficient cause which set in motion the chain of circumstances leading up to the injury itself (Wengert v. Lyons (Mo. App.), 273 S. W. 143; Strayer v. Quincy, O. & K. C. R. Co., 170 Mo. App. 514, 156 S. W. 732); and the primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole, the first so operating upon the others as to make it primarily productive of the injury. [Wengert v. Lyons, supra; Johnson v. Ambursen Hydraulic Construction Co., 188 Mo. App. 105, 173 S. W. 1081; 45 C. J. 910.]

"(3, 4) In determining whether the continuous sequence of events has been broken by an efficient intervening cause so as to constitute the latter the proximate cause of the injury, it is understood that for a cause to be properly denominated as efficient and intervening, it must be a new and independent force or agency which breaks the chain of causal connection between the original wrong and the final consequence. Such intervening act or event must be sufficient to stand of itself as the cause of the injury, and be one but for which the injury would not have occurred; and if the new cause serves merely to

accelerate the effect of an original cause, which alone was sufficient to produce the injury, the first cause will still be considered the proximate cause. [45 C. J. 930, and cases cited.]

"(5) Moreover, in this same connection it is significant to note that the courts, in dealing with this ever troublesome question, have found it to be the part of wisdom to announce a further rule, which is that the question of proximate cause is ordinarily, although concededly not always, a question for the jury. [Northern v. Chesapeake & Gulf Fisheries Co., supra; Hogan v. Fleming, 317 Mo. 524, 297 S. W. 404; Lovett v. Kansas City T. Ry. Co., 316 Mo. 1246, 295 S. W. 89; Kidd v. Chicago, R. I. & P. Ry. Co., 310 Mo. 1, 274 S. W. 1079.]"

The evidence in this case shows, or at least was sufficient for the jury to determine, that the first automobile in the procession was suddenly stopped by the motor car coming immediately in front of it; the evidence also shows that it was necessary to stop every automobile in the procession, and that every automobile in the procession did stop.

Did the acts of the motor car have anything to do with the sudden stopping of the procession, and since the automobile in which plaintiff was riding was a part of the procession did the acts of the motorman have anything to do with causing the car in which plaintiff was riding to stop? We at least think it was a question for the jury to determine.

We think it is sufficient to constitute proximate cause that the negligence for which recovery is sought is the cause which sets in motion the chain of circumstances leading up to the injury, and the primary cause will be the proximate cause where it is so linked and bound to the succeeding events that all create or become a continuous whole, with the first so operating on the others as to make the primary cause productive of the injury. The question of proximate cause and the defense of intervening causes is usually a question for the jury.

We are sustained in this conclusion by the following decisions of our Supreme Court: Kidd v. Rock Island Ry. Co., 310 Mo. 1, 24, 274 S. W. 1079; State ex rel. St. Charles v. Haid et al., Judges, 325 Mo. 107, 113, 28 S. W. (2d) 97; Hogan v. Fleming, 317 Mo. 524, 535, 297 S. W. 404; Lovett v. Terminal Ry. Co., 316 Mo. 1246, 1254, 295 S. W. 89.

A case very much in point is one by the Kansas City Court of Appeals. [Hockaday v. Panhandle Eastern Pipe Line Co., 66 S. W. (2d) 956.]

The defendant seriously contends that the drivers of the automobiles should have given warning to those in the rear by extending the hand indicating that a stop was to be made, which was not done in this instance, and that the driver of the automobile in which the plaintiff was riding was negligent in driving too closely to the one in front, and that these acts of negligence were the cause of the injury.

We think it may be said that in this State the doctrine of concur-

rent negligence applies. A defendant may be liable even if the injury was not caused by his sole negligence. If his negligence concurred with that of another and became a part of the direct and proximate cause he was liable, although not the sole cause. And these acts of negligence are questions for the jury. [Harrison v. K. C. Light Co., 195 Mo. 606, 93 S. W. 951; State ex rel. Hauck Bakery Co. v. Haid et al., 333 Mo. l. c. 83, 62 S. W. (2d) 400; Christiansen v. St. Louis Pub. Serv. Co., 333 Mo. 408, 413, 62 S. W. (2d) 828.]

So, based upon the facts in this case, about which there is not much controversy, and upon the law as laid down by our courts, we cannot do otherwise but hold that the trial court properly overruled the demurrer to the evidence in this case and submitted the issues to the jury.

The judgment is affirmed. *Allen, P. J.,* and *Bailey, J.,* concur.